GEORGE W. YOUNG *et al.*

*v.*

WILLIAM HARKLEROAD *et al.*

*Filed at Mt. Vernon November 11, 1896—Rehearing denied May 5, 1897.*

1. WILLS—*in construing a will its whole scope and plan will be consid-
ered.* In construing a will its whole scope and plan will be consid-
ered, its various provisions will be compared, and, if possible, such
a construction be adopted as to allow all provisions to stand.

2. SAME—*where a defect in language is simply a verbal omission the
meaning may be implied.* Where the defect in the language used in
a will is merely a verbal omission the meaning of the clause may
be implied, in order to reach the testator's obvious general intent.

3. SAME—*language of will construed.* Where the first part of a sen-
tence of a will devises the testator's estate to his children "during
their natural lives, and after their decease to the heirs of their
bodies," a second part, that "in case of the death of either one their
portions shall belong to the heirs of the others," etc., will be con-
strued as meaning "in case of the death of either one *without such
heirs,*" etc.

APPEAL from the Circuit Court of Madison county;
the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

This is a bill by William Harkleroad and others to
construe the will of his father, Isaac Harkleroad, de-
ceased, late of Madison county.    The testator died leav-
ing a widow, William and Isaac Harkleroad, his sons,
Florence Maud Harkleroad, a daughter, Fred B. Kinder,

(the only child of his grand-daughter, Annie B. Kinder, only daughter of a fourth child of the testator, who was the wife of George Young at the time of her death,) and Ida B. Anderson, (only child of a fifth child of the testator,) his only heirs him surviving. The sixth and seventh clauses of the will in question are as follows:

"*Sixth*—It is my will and I do hereby bequeath my real estate in the American Bottom, known and described as follows, to-wit: The south half of the north-west quarter and the south half of the south-west quarter and the south-west quarter of the south-east quarter of section 13, and the south-east quarter of the south-east quarter of section 14, and the north-east quarter of section 23, and the north half of the north-west quarter of section 24, all in T. 3 N., 9 W., in Madison county, Illinois, to my sons, William Harkleroad and Isaac Harkleroad, and to my daughter, Florence Maud Harkleroad, and to my granddaughter, Annie B. Kinder, during their natural lives, and after their decease to the heirs of their bodies, (excepting only the heir now living of Annie B. Kinder, who shall not receive any portion whatever above that set apart and heretofore mentioned,) and in case of the death of either one, then their portion to descend and belong to the heirs of the other persons mentioned in this section, in equal portions. Said real estate is to be so subdivided that my son William Harkleroad shall receive one-fourth of one share or portion more than either of the shares mentioned in this section. The division or setting apart to each one of their share or portion after five years from my decease, or when Florence Maud shall arrive at the age of eighteen years.

"*Seventh*—After the death of my said wife, Altheda Harkleroad, it is my will that the real estate in Collinsville, hereinbefore described, be sold and the proceeds thereof divided as follows: $1000 to Ida Belle Harkleroad, and the remainder between William Harkleroad, Isaac Harkleroad, Florence Maud Harkleroad and Annie

B. Kinder, and in case of the death of either one, then their portion to descend to and belong to their legal heirs, excepting only Frederick Kinder, son of Annie B. Kinder, especially mentioned."

The circuit court construed the will, finding the interests of the parties as follows: "It is therefore decreed, that in and by the sixth section of said will William Harkleroad, Isaac Harkleroad, Florence Maud Harkleroad and Annie B. Kinder took an undivided life estate in the premises described in said section 6 in the following proportions: William five-seventeenths, Isaac four-seventeenths, and Florence Maud Harkleroad four-seventeenths, and Annie B. Kinder four-seventeenths, with remainder to the heirs of the bodies of said William, Isaac and Florence Maud Harkleroad and Annie B. Kinder, excepting therefrom Fred B. Kinder, each to take *per stirpes* a share in the remainder equal to the parents' share in the life estate, so that the heirs of the body of William Harkleroad would take five-seventeenths of the remainder and the heirs of the body of each of the other three (excepting Fred B. Kinder) four-seventeenths; that upon the death of any of said four life tenants without leaving heirs of their body the share devised to such life tenant vests in the survivors, including Ida Belle Anderson, (formerly Harkleroad,) and their descendants; that the clause of section 6, namely, 'and in case of the death of either one, then their portion to descend and belong to the heirs of the other persons mentioned in this section, in equal portions,' is inoperative and does not change the legal meaning thereof; that the title and interest of said parties in and to the real estate in said section are now as follows: William Harkleroad is the owner of a life estate in an undivided five-seventeenths; also an undivided one-seventeenth in fee simple, being the undivided one-fourth of the share devised to the heirs of the body of Annie B. Young, other than Fred B. Kinder; Isaac Harkleroad, complainant, is the owner in fee of an undivided five-

seventeenths; Florence Maud Harkleroad has a life es-
tate in an undivided four-seventeenths and an undivided
one-seventeenth in fee; and Ida Belle Anderson (for-
merly Harkleroad) is the owner in fee of an undivided
one-seventeenth of said premises.   By said seventh sec-
tion, construed according to its legal effect, Ida Belle
Anderson is entitled to the net proceeds to be realized
from a sale of the Collinsville real estate mentioned in
sections 3 and 7, after the death of Altheda Harkleroad,
to the extent of $1000, and the remainder of said net pro-
ceeds is bequeathed to William Harkleroad, Isaac Har-
kleroad, Florence Maud Harkleroad and Annie B. Young
and their legal heirs, except Fred B. Kinder.   The inter-
est of Isaac Harkleroad, devisee, at his death descended
to his infant son, Isaac.   The interest of said Annie B.
Young, at her death, by her will vested in her husband,
George Young, subject to the payment of the legacy of
$100 to Fred B. Kinder."

George Young and Fred B. Kinder bring the cause here
and assign errors, and William Harkleroad and others,
complainants below, assign cross-errors.   Ida B. Ander-
son also questions the correctness of the decree below.

HADLEY & BURTON, and E. C. & W. F. SPRINGER, for
appellants:

If there is no devisee the devise fails, and the title to
the property remains in the devisor.   *Dinwiddie* v. *Self*,
145 Ill. 300; *Lehndorf* v. *Cope*, 122 id. 317; *Lewis* v. *Barnhardt*,
43 Fed. Rep. 854; Tiedeman on Real Prop. sec. 403; *Doe* v.
*Considine*, 6 Wall. 458.

TRAVOUS & WARNOCK, for appellees William, Flor-
ence M. and Isaac Harkleroad:

In the construction of a will the testator's intention
controls.   This intention is ascertained from a full view
of everything contained in the will, and every provision
will be upheld and given its proper force, unless there is

some invincible repugnancy or it is absolutely unintelligible. 1 Redfield on Wills, 451; *Dickison* v. *Dickison,* 138 Ill. 541; *Allen* v. *McFarland,* 150 id. 455; *Roberts* v. *Roberts,* 140 id. 345.

In order to conform to and effectuate the obvious intent of the testator, gathered from his whole will, words will be transposed, changed or supplied. 1 Redfield on Wills, 466; *Schaefer* v. *Schaefer,* 141 Ill. 337; *Marsh* v. *Hague,* 1 Edw. Ch. 174; *Carter* v. *Bloodgood,* 3 Sandf. Ch. 293.

The words "in case of the death of" import substitution, and the words "without heirs of the body" will be supplied by implication, where necessary to effectuate the plain purpose of the testator. *Galland* v. *Leonard,* 1 Swanst. 161; *Abbott* v. *Middleton,* 21 Beav. 142; *Sheppard* v. *Lessingham,* Amb. 122; *Spalding* v. *Spalding,* Cro. Car. 185; 1 Redfield on Wills, 454, and note.

JOHN G. IRWIN, for appellee Ida B. Anderson:

The intention of a testator is always to be ascertained from the language of his will, but parol evidence may be heard to aid in the interpretation of wills,—not to add words to them, but to explain latent ambiguities, and to put the judge in the shoes of the testator, so that the language used may be construed from that point of view. *Whitcomb* v. *Rodman,* 156 Ill. 116; *Richardson* v. *Eveland,* 126 id. 39; *Bowen* v. *Allen,* 113 id. 59; *Kaufman* v. *Breckenridge,* 117 id. 313; *Decker* v. *Decker,* 121 id. 345.

A devise to a person named "and his heirs," under the rule in *Shelly's case,* gives him a fee, which cannot be limited by a subsequent provision that in case he dies without heirs of his body the property shall pass to other persons in fixed proportions. *Ewing* v. *Barnes,* 156 Ill. 61.

A limitation after a fee simple determinable will be void, unless the contingency upon which the first limitation is to determine and the second to arise is within the rule against perpetuities. 20 Am. & Eng. Ency. of Law, 920; *Post* v. *Rohrbach,* 142 Ill. 606.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Counsel for George Young insist that the words, "and in case of the death of either one then their portion to descend and belong to the heirs of the other persons mentioned in this section, in equal portions," are meaningless and inoperative, and that when Annie B. Young died without any heirs of her body, as contemplated by the testator, the portion of the land devised to her for life descended to the heirs general of the testator as intestate property, and that as Mrs. Young was one of those heirs, and had willed her estate to her husband, George Young, he, by virtue of the descent to his wife and of her will to him, took the estate. Counsel for Fred B. Kinder also insist that the above words are inoperative, but their contention is, that the portion of the estate of his mother held for her life descended to him, not as an heir of his mother's body under the will, but as one of the general heirs of the testator. William, Florence Maud and Isaac Harkleroad, (son of the life tenant, Isaac Harkleroad,) by their counsel, contend that the above words should not be considered as meaningless, but by construing them to mean "that in case of the death of either one without such heirs" the real intention of the testator will be discovered, the latter words, "without such heirs," being implied from the general intent of the testator. Counsel for Ida B. Anderson maintains that the true construction of the clause in question does not require the use of implied words nor the striking out of other words as inoperative, but insists that the words "in case of the death of either one," refer to the heirs of the bodies of those taking the life estate.

It has been frequently announced by this court that the fundamental rule in the construction of wills is to consider their whole scope and plan, comparing their various provisions with one another, and construing them, if possible, so that all may stand. The testator in this cause bequeathed his real estate to his children and

grandchildren "during their natural lives, and after their decease to the heirs of their bodies." Thus far his meaning is clear and plain. But the remaining portion of the sentence, "and in case of the death of either one, then their portion to descend and belong to the heirs of the other persons mentioned in this section," taken literally, directly contradicts what has just been said. For instance, since the death of the testator Isaac Harkleroad (the life tenant) has died, leaving a son. Under the first part of the clause under consideration the son takes a remainder in fee as the heir of the body of his father; under the second part he is cut off, for, in case of his father's death, that estate is to go "to the heirs of the other persons mentioned" in the section. Under such a construction he would take as remainder-man at the death of and as successor to other life tenants than his father, taking the estate, not of his father, but of other devisees,—and this again would be contrary to the intention of the testator previously expressed, as he would not be an heir of the body of the first taker. It is apparent that the sentence, as it stands, does not literally express the testator's intention. Clearly, something has been left out. Is it not equally clear, from the language used, what that omission is? It is needless to say that the testator did not contemplate the "death" of the life tenants as a contingency. Such a construction renders the clause inconsistent within itself, as he recognized the absolute certainty of that event in the first part of the sentence, making it the point at which the remainder-man should take the estate.

From a careful reading of the will we think the words "in case of the death of either one" indicate substitution, and is a further provision, to take effect upon the failure of some event anticipated by the testator. They are a part of the same sentence, and do not indicate a change in the general plan of disposition of his property. We think that provision is understood, by implication, to mean, "in

case of the death of either one *without such heirs* then their portion to descend and belong to the heirs of the other persons," etc.   Under this construction there is no necessity of rejecting any part of the will nor of adding anything thereto, the words "without such heirs" being plainly inferred.   The defect in the language is simply a verbal omission, and being so, the true meaning of the clause may be implied "in order to reach the obvious general intent of the testator."  1 Redfield on Wills, 465.

Our attention is directed to two cases cited by counsel for appellees, the first being *Abbott* v. *Middleton*, 21 Beav. 143.   The testator in that case bequeathed to his wife an annuity of £2000 for life, and directed a particular fund to be set apart for securing it.   He then proceeded to express himself as follows:  "And on her decease the sum provided and set apart for such payment to become the property of my son G. C., so far as the said G. C. shall receive interest on such sum during his life, and on his demise the principal sum to become the property of any child or children he may leave, born in lawful wedlock; but in case of my said son dying before his mother, then and in that case the principal sum to be divided between the children of my daughters, (naming them,) in equal portions to each."   The son died before his father and mother, leaving one child, who survived them.   It was held that to effectuate the plain intention of the testator the words *"without leaving a child"* should be implied after the word "dying."   Under this construction of the will the child was held entitled to the principal sum after the grandmother's death.   The second case cited is *Spalding* v. *Spalding*, Cro. Car. 185, cited in the *Abbott case*.   In this case the words "without issue" were understood to be implied, under circumstances similar to those in the *Abbott case*.   We are satisfied these cases are in point and are in harmony with the decisions of this State, and hence we think the sixth clause should be construed as if it read, "in case of the death of either one without such heirs."

Under this construction the next question is, what are the respective interests of the parties to this cause? Isaac Harkleroad, the life tenant, died prior to the filing of this bill, leaving a son, who takes his father's portion of the lands in fee, under the will. Of this there is no question. The last, and more difficult, question is, what becomes of the portion of the estate held for life by Annie B. Young? She is now deceased, but has left no heir of her body who comes within the provisions of the will, her only son, Fred B. Kinder, being expressly excepted by its terms. Under our construction of the sixth clause, Mrs. Young having died without such heirs, the will directs that the portion held by her shall "belong to the heirs of the other persons mentioned in this section, in equal portions." The other persons mentioned in the section are William, Isaac and Florence Maud Harkleroad. William and Florence Maud are still living, but, technically speaking, have no heirs. Isaac, one of the life tenants, being dead and leaving a son, that son is the only person coming within the terms of the will as an "heir of the other persons mentioned in this section." What portion of the estate does he take? Does he take all, as the only heir capable of taking, or does he take but a part of it? In other words, does that portion of Mrs. Young's estate which would have gone to the heirs of William and Florence Maud lapse for want of such heirs, and become subject to distribution among the heirs of the testator generally, as intestate estate, or does the heir of Isaac, deceased, take the whole of that portion? The determination of this question depends upon whether the testator intended that the estate of either party dying without heirs of the body should go to the heirs of the other parties per capita or *per stirpes.* His language is, "then their portion to descend and belong to the heirs of the other persons mentioned in this section, in equal portions," and, taken literally, it means that his several grandchildren who come within the term "heirs of the

other persons mentioned," shall take pro rata or in equal portions, without any reference to the number of children of each life tenant; and in our view of the case, the only person who comes within the terms of the will as an "heir of the other persons" mentioned is the son of Isaac Harkleroad, deceased, the life tenant, and the whole of the life estate of Mrs. Young therefore goes to him in fee. From a painstaking examination of the entire will we are unable to discover anything which sufficiently shows a different intention from that thus literally expressed, and therefore effect must be given to the language used. This conclusion is fortified, to some extent, by the fact that William Harkleroad, one of the life tenants, is *non compos*, and was known by his father to be so, and therefore it is fair to presume that he did not contemplate William would have children.

As to the seventh clause of the will, it is clear the testator disposed of the entire proceeds which will arise from the sale of the Collinsville property upon the death of the widow, Altheda Harkleroad. She was still living at Mrs. Young's death, and hence the latter could have had no vested interest in that fund capable of being disposed of by her will. Upon the death of the widow, when that time arrives, the portion of the proceeds of the sale which would have gone to Mrs. Young had she been living at that time will go to her "legal heirs, excepting only Frederick Kinder," they taking under the will of the testator, Isaac Harkleroad. It cannot now be told who they will be.

We think the action of the circuit court in decreeing a part of the sixth clause to be meaningless and inoperative is erroneous. Its judgment is therefore reversed and the cause is remanded, with directions to that court to construe the sixth and seventh clauses of the will in conformity with the views herein set forth.

*Reversed and remanded.*