**M. J. Wolford, Executor of last will of James H. Barkley, Deceased, Appellant, v. Thomas Harvey Young, Sr., et al., Appellees. J. Frank Geddes, Appellant.**

WILLS—*construction of codicil canceling bequests.* Under a will which gave the testator's estate to his wife for her life and which, by a codicil, bequeathed certain sums of money to each of six named legatees and thereafter devised to another legatee an undivided interest in the remainder over in the estate, and which, by a later paragraph, provided that in case the wife should survive testator and qualify as executrix of his will, then the provisions as to the funds bequeathed to the legatees named should be canceled and the entire estate vested in the wife, she to make provision for such legatees from the estate, the devise of the undivided interest does not fall with the specified bequests where the wife survives testator and qualifies as executrix, although such devisee is named among them, where the will also provides that the devise of such interest was made in payment for services rendered and to be rendered by such devisee, and it expressly provides that in case such devisee should file a claim against the estate for services, such undivided interest should be forfeited, and where it appears from the whole will that it was testator's

intention that such devisee should have such undivided interest in all events unless forfeited as provided.

Appeal by defendant Geddes from the Circuit Court of Vermilion county; the Hon. JOHN H. MARSHALL, Judge, presiding. Heard in this court at the April term, 1922. Reversed and remanded with directions. Opinion filed October 25, 1922. Rehearing denied December 19, 1922. *Certiorari* denied by Supreme Court (making opinion final).

JONES & LEVIN and ACTON & ACTON, for appellant J. Frank Geddes.

WALTER C. LINDLEY, for appellant M. J. Wolford.

RALPH B. HOLMES and CHARLES TROUP, for appellees.

BUELL H. SNYDER, guardian *ad litem,* for infant Illetta Preble.

MR. JUSTICE HEARD delivered the opinion of the court.

The appeal in this case was originally taken to the Supreme Court, which court in *Wolford v. Young,* 300 Ill. 320, in transferring the appeal to this court made the following statement of facts:

"On January 29, 1887, James H. Barkley and his wife executed their separate wills. Each gave to the other the use, for life, of the property of the testator or testatrix, with the right to sell and convey and use the proceeds at will. Each named the other as executor or executrix, and all other provisions of the wills were identical. In each the remainder after the life estate was divided into eight parts, of which two were given to the children of Bernard Preble, a deceased brother of Mrs. Barkley, one to each of the three living sisters of Barkley, and three to the children of three deceased sisters of Barkley, to be distributed among them per capita. On March 23, 1915, the testator and testatrix executed codicils, which were iden-

tical except that each was named as executor or executrix of the other's will, and by the eighth paragraph it was declared that the provisions contained in the first seven paragraphs of the codicil should be canceled and become null and void if the surviving spouse should .qualify as executor or executrix of the will, and that in such case the surviving spouse should take the entire estate of the testator or testatrix and make provision for the legatees from the estate of the testator or testatrix, or what should remain therefrom at the time of the death of the survivor. Barkley died one month after the execution of these codicils, and his wife qualified as executrix of his will and continued such executrix until August 14, 1917, when Milton J. Wolford was appointed her successor, as provided in the codicils. On June 13, 1920, she died, and Wolford was appointed and qualified as executor of her will.

"The question involved in this litigation had its origin in an application of Wolford to the probate court of Vermilion county for an order of distribution of $200,000, which, as executor of both wills, he had in his hands but because of inconsistent claims of those interested in the estate he could not safely pay out except under an order of court. Upon a hearing of this application the court made an order for the distribution of one-sixteenth of the estate to J. Frank Geddes, and certain of the parties appealed to the circuit court. Thereupon the executor filed a bill in the circuit court asking for a construction of the will of James H. Barkley. These two causes were consolidated and upon a hearing a decree was rendered construing the will, and, among other things, directing that the executor should distribute the funds that came into his hands to the persons named in the decree in the proportions named, and denying to Geddes the one-sixteenth of the testator's estate, which he claimed by virtue of the provisions of the seventh paragraph of the codicil. Geddes appealed from this decree.

"Counsel for Geddes state in their brief that the one question in this case is as to whether or not the

devise of the one-sixteenth interest to Geddes in the seventh paragraph of the codicil became extinguished or was destroyed by the eighth paragraph of the codicil.''

In *Nixon v. Nixon,* 268 Ill. 524, it was said: ''The paramount rule in construing wills is to ascertain from the language of the will the intent of the testator and give effect to such intent if it can be done without violating some rule of law. (*Smith v. Dellitt,* 249 Ill. 113; *Armstrong v. Barber,* 239 Ill. 389.) Another fundamental rule in the construction of wills is to consider the whole scope and plan of the testator and to compare the various provisions with one another, construing them, if possible, so that all can stand. (*Leary v. Kerber,* 255 Ill. 433; *Bennett v. Bennett,* 217 Ill. 434; *Young v. Harkleroad,* 166 Ill. 318.) The intention is not to be gathered from one clause of the will alone but from the whole will and all its parts. (*Mosier v. Bowser,* 226 Ill. 46.) All the provisions of the will must be taken into consideration. (*Wimbush v. Wimbush,* 253 Ill. 407.)''

In *Boyle v. Moore,* 299 Ill. 571, it was said: ''In the construction of every will its meaning and intent must depend on the language of the particular will, with such aid as may be afforded by the circumstances surrounding the testator at the time of making his will. The differences in the language of various wills construed and of the circumstances surrounding the testators render decisions in will construction cases less helpful as guides than is the case upon other subjects. (*Wallace v. Noland,* 246 Ill. 535; *Black v. Jones,* 264 Ill. 548; *Ward v. Caverly,* 276 Ill. 416.) There are certain general rules applicable to all cases of will construction, among them the paramount rule that the intention of the testator is to be ascertained and effect given to it if not contrary to law. Other general rules are, the intention to be ascertained is that expressed in the will; that in determining the inten-

tion of the testator all parts of the will should be considered together, and, if possible, effect be given to every clause and provision.'' In *Bohn v. Irvington,* 303 Ill. 82, it was said: ''It is a cardinal rule in the construction of wills that the intention of the testator, where not contrary to the law and where it may be determined from the language of the will, must govern.''

By the first, second, third, fourth, fifth and sixth paragraphs of the codicils of Barkley and his wife, bequests of certain sums of money or funds were made to the Springhill Cemetery Association, Harvey Barkley, Glenwood Preble, Alfred Barkley, Joseph Barkley and John Tilford, respectively.

The seventh and eighth paragraphs of the codicil were as follows:

''Seventh: I hereby devise and bequeath to my nephew, J. Frank Geddes, who is a son of Emerine Geddes, the one-sixteenth of my estate, and I hereby change the bequest and gift to the said Emerine Geddes, who was given a one-eighth of my estate by will, and direct that she be given one-sixteenth of my estate, if she be living, and if she be dead, that the balance of the children of said Emerine Geddes shall share equally amongst themselves the one-sixteenth of my estate.

''Eighth: If at the time of my decease my wife Cynthia A. Barkley, shall be alive and shall qualify as executrix of this my last will and testament, as herein provided, then I direct that all of the provisions made in this my last will and testament with reference to the fund bequeathed to Harvey Barkley, Glenwood Preble, Alfred Barkley, Joseph Barkley, John Tilford, J. Frank Geddes and to the Springhill Cemetery Association of Danville, Illinois, shall be canceled and become null and void, and my wife, as provided in my will, shall take my entire estate, and make provision for the above named legatees from my estate, or what shall remain therefrom at the time of her death.''

It is to be noted that while the bequests to the other parties named in the eighth paragraph were of funds the bequest to J. Frank Geddes was not a bequest of a fund but of a one-sixteenth distributive share of the remainder after a life estate. It is also to be noted that while the eighth paragraph provides that in the event of the wife surviving all these bequests shall be canceled and become null and void and that his wife, as provided in his will, should take the entire estate, the wife did not and could not by reason of this provision take the bequest to J. Frank Geddes because his bequest was only a remainder after her life estate and it was only provided in the will that she should have a life estate therein.

The word "void" has been used so frequently by the courts without carefully distinguishing whether it was intended to mean absolutely void or merely voidable (*Hewes v. Glos,* 170 Ill. 436; 29 Amer. & Eng. Encyc. of Law, 2nd Ed., 1065) that any document in which this term is used must be examined with care in order to ascertain the meaning in which the word is used, whether meaning absolutely void, voidable, or only meaning "having no present effect." *McGarry v. Village of Wilmette,* 303 Ill. 147.

Cynthia A. Barkley made no provision from testator's estate, as she was directed by the eighth paragraph to do, for J. Frank Geddes. She did in her will, however, make provision for the funds bequeathed to the other persons mentioned in this paragraph. It is evident from the final clause of this paragraph, no matter what construction be placed upon it, that it was the intention of the testator that J. Frank Geddes should have some interest in his estate by virtue of the codicil and in the twelfth paragraph of the codicil we find that it was the intention of the testator that that interest was a one-sixteenth, as in that clause he so states and gives his reasons for making the bequest.

The twelfth paragraph of the codicil is as follows:
"Twelfth: It has been in consideration of the services that J. Frank Geddes has given to me for the past few years, during the decline in my health, looking after my farms and business generally, that has led me to make to him the bequest I have, but it is to be understood that this bequest is in full settlement for all services of himself and his wife, Martha; and should the said J. Frank Geddes present a bill against my estate for services that have been rendered in the past, after my decease, then the bequest to him shall be canceled, and my executor is directed to not pay such bequest to him, but that the one-sixteenth of my estate, which has been bequeathed to him, in such contingency shall become vested in Emerine Geddes. And the said J. Frank Geddes, after my decease, shall assist the executor of my estate in looking after my real estate, and be subject to the executor's command in doing the things that are necessary to be done in caring for my real estate, and assist him in the sale thereof, and for such services there is to be no compensation charged by the said Geddes, as the said bequest is in full for future services in this respect, and the said Geddes is requested to personally look after the care of the Springhill Cemetery Association, take care of the eight lots mentioned in the bequest to said Association, and give this his attention as long as he resides in the vicinity of, or in the City of Danville, Illinois, as he is the only relative I have residing here, and I desire he do this in connection with his other services."

It is to be noted that while the eighth paragraph does not provide for the vesting of J. Frank Geddes one-sixteenth in Emerine Geddes but only leaves her with one-sixteenth of the remainder, this twelfth paragraph provides that in case of the forfeiture by Geddes it shall become vested in Emerine Geddes.

Mr. Barkley and his wife each had a comparatively large estate in their own right. The personal estate of James H. Barkley, as shown by the inventory, was $329,871.46, and he had sufficient real estate to make

the total value of his estate at least $425,000. Cynthia A. Barkley, his wife, had a personal estate which amounted to $156,950.95, as shown by the inventory, and real estate to make the total estate worth at least $250,000. The personal estate of each considered principally of notes, building association stock and United States bonds. One-sixteenth of Cynthia A. Barkley's estate is much less than one-sixteenth of James H. Barkley's estate.

It was evidently the scheme of Barkley and his wife in making the wills and codicils that the two estates should be considered and treated as one and that no distribution of the estate of a decedent, except the payment of debts, should be made in the lifetime of the survivor but that on the death of the survivor the two estates should be distributed at the same time and to the same persons.

Applying the recognized rules of construction to this will, reading it in the light of all the surrounding circumstances, reading the entire will together, we are of the opinion that it was the intention of the testator that J. Frank Geddes in his own right should have one-sixteenth of the remainder of testator's estate after the expiration of the life estate of Cynthia A. Barkley; that the heirs of Emerine Geddes took one-sixteenth and that the court erred in holding otherwise.

The order of the circuit court is reversed and the cause remanded with directions to the circuit court to enter an order construing the will and distributing testator's estate in accordance with the views herein expressed.

*Reversed and remanded with directions.*