## LOUIS BERNERO, an infant, by Lorraine T. Bernero, Curatrix of his Estate, Appellant, v. ST. LOUIS UNION TRUST COMPANY et al.

### In Banc, April 30, 1921.

1. **WILLS: Construction of: Testator's Intention: How Ascertained.** The cardinal rule for the construction of wills is to have due regard to the directions of the will and the true intent and meaning of the testator, which is to be gathered from the will itself and the whole of it, viewed in the light of the circumstances surrounding its execution.

2. ———: ———: ———: ———: **Interpolating Words.** In cases where a clear and definite provision is followed by a repugnant or inconsistent provision not equally clear and definite, tending to defeat or cut down the prior one, or where the provision sought to be sustained by the actual words used is against the manifest intention of the testator, as gathered from the entire instrument, or where the exact wording, of vague and uncertain meaning, would result in a disposition of the property devised utterly at variance with the natural instincts of the testator, such as the defeat of succession in title in the heirs of a favorite child of testator for the benefit of strangers, the court may interpolate words in order to carry out the intention of the testator.

3. ———: ———: ———: ———: ———. To justify the court, when seeking to construe a will, in interpolating words to arrive at the

(602)

testator's intention, the will, on its face, must show some contra-
diction or repugnancy, or that it is incomplete; and it must then
further appear from the face of the will itself that the testator
has inadvertently or unconsciously omitted certain words or lan-
guage which are necessary to make his intention clear, and also
what words or language have been omitted and that the testator
clearly intended to make a disposition which the supplied words
will effectuate.

4. ——: ——: ——: ——: ——. Where the meaning of
the testator has been clearly and distinctly expressed in plain and
unequivocal language, the court will not supply or interpolate
words not used by the testator, however much the testator's dis-
position of his estate may appeal to the court as hard and un-
natural.

5. ——: ——: Particular Estate Dependent on Contingency: Limi-
tations Consecutive Thereon Likewise Dependent. When a con-
tingent particular estate is followed by other limitations, the
rule is that, if the ulterior limitations be immediately consecutive
on the particular contingent estate in unbroken continuity, and no
intention or purpose is expressed with reference to that estate, in
contradistinction to the others, the whole will be considered to
hinge on the same contingency; and that, too, although the con-
tingency relate personally to the object of the particular estate, and,
therefore, appear not reasonably applied to the ulterior limitations.

6. ——: ——: Case Adjudged. The testator devised certain real
estate to his wife to have and enjoy during her natural life and
at her death the same to pass to their adopted son, if he should
survive her, to have and enjoy during his natural life, and at his
decease to pass to and vest in fee in his children if any he have,
or their descendants, but in default or failure of such direct heirs,
children or grandchildren him surviving, then at the time of his
death the title to said realty in fee should pass to and vest in tes-
tator's right heirs; if, however, testator's said wife should survive
said adopted son, then she, said wife, was thereby empowered to de-
vise said realty as she should see fit, or if she should fail to
make such testamentary disposition of same, then said realty, upon
her death, should vest in testator's right heirs, if she should sur-
vive said adopted son. The adopted son married after testator's
death, and had one child, the plaintiff herein, and then died before
testator's wife. Thereafter testator's wife died testate and by her
last will exercised said power to devise said realty and devised the
same in trust for the children of her sister, and made a request of
$10,000 to a trustee in trust for plaintiff. This suit is one to
quiet title to said realty in plaintiff, who claims a fee. *Held*,
that the life estate of testator's adopted son, plaintiff's father,

was contingent upon his surviving testator's wife and the remainder in fee to said son's descendants was likewise dependent upon the same contingency and that, inasmuch as said son predeceased said wife, the plaintiff took no title to or interest in said realty, under said will. (HIGBEE and WOODSON, JJ., dissenting.)

7. ———: ———: ''Right Heirs:'' Testator's Definition of Terms. Inasmuch as it appears from testator's will that in one clause of his will he used the terms, "my right heirs" as descriptive of a class different from the "direct heirs, children or grandchildren" of his adopted son, the court will give the same meaning to said words, "right heirs," whenever used in said will, in the absence of any other definition of them; and therefore plaintiff could not claim title to said realty under said will as a "right heir" of testator.

8. ———: Acceptance of Benefit: Waiver of Right to Contest: Ancestor and Heir. One who himself accepts a benefit under a will, as well as one whose ancestor through whom he makes claim, accepts such benefit, waives the right to contest the validity of such will.

Appeal from St. Louis City Circiut Court.—*Hon. William T. Jones,* Judge.

AFFIRMED.

*Thomas D. Cannon, David Goldsmith, M. N. Sale, E. P. McCarty* and *John Burke* for appellant.

(1) The will of Louis Bernero should be construed so as to confer testamentary power of disposition upon Theresa Bernero only in case Manuello died before her and left no issue; and in order that the manifest and true intention of the testator may be effectuated the court will supply the words omitted so that the part of said will granting the power of appointment to Theresa Bernero shall read: ''If, however, my said wife shall survive said Manuello, and he leave no issue, then she, said Theresa Bernero, is hereby empowered to devise said realty as she shall see fit.'' . . . (a) That construction is commanded by the statute. R. S. 1909, sec. 583; Bryant v. Garrison, 150 Mo. 667. (b) That construction is sustained by the following direct authorities: 2 Jarman on Wills (5 Am. Ed. from 4 Eng. Ed.), pp. 536-

538; Spalding v. Spalding, 3 Crs. Car. 385; Abbott v. Middleton, 21 Beav. 143; Dulaney v. Dulaney, 79 S. W. 195, 25 Ky. L. R. 1659; Selden v. King, 2 Call, 72; Liston v. Jenkins, 2 W. Va. 62; Young v. Harklrood, 166 Ill. 318; Wheable v. Whithers, 16 Simons, 505; Holmes v. Williams, 1 Root, 332; Den v. Combs, 18 N. J. L. 37; Robards v. Brown, 167 Mo. 457, 460; Nichols v. Boswell, 103 Mo. 160; Gardner on Wills, ch. 13, p. 376; Hellerman's Appeal, 115 Pa. St. 120; Penn. v. Folger, 77 Ill. App. 365; Glover v. Condell, 163 Ill. 566; Dew v. Barnes, 1 Jones Eq. 151; Eatherly v. Eatherly, 1 Caldwell, 461; Wells v. Wells, 279 Mo. 64; Sidney v. Shelly, 19 Ves. 352; Bacon v. Nichols, 105 Pac. 1082; Kellog v. Mix, 37 Conn. 243; Aulick v. Wallace, 12 Bush. 531; Geiger v. Brown, 4 McCord, 418; Sessoms v. Sessoms, Dev. & B. 453; Lynch v. Hill, 6 Munf. 114; Ball v. Phelan, 94 Miss. 293; In re Donges Estate, 103 Wis. 497; Cleland v. Waters, 16 Ga. 496; Baker v. Estate of McLeod, 79 Wis. 534. (2) The construction of the will of Louis Bernero contended for in appellant's first point is required, because the provision of Clause Five of said will giving Theresa Bernero testamentary power of disposition follows a clear, plain and unambiguous devise of the property in question to the issue of Manuello Bernero, and because a devise of that character cannot be cut down or lessened by a subsequent provision not equally as clear, plain and unambiguous. Elsea v. Smith, 273 Mo. 414; Settle v. Schaffer, 229 Mo. 570; Hornbrough v. Craven, 225 S. W. 448; Wells v. Fuchs, 226 Mo. 108; Sevier v. Woodson, 205 Mo. 216; Gannon v. Pauk, 200 Mo. 94; Gannon v. Albright, 183 Mo. 252; Yocum v. Siler, 160 Mo. 289; Chew v. Keller, 100 Mo. 369; Byrnes v. Stillwell, 103 N. Y. 453; Freeman v. Coit, 96 N. Y. 68; Damrell v. Hart, 137 Mass. 220; Mickley's Appeal, 92 Pa. St. 517; Clavering v. Ellison, 3 Drewry, 470; Burton v. Gagnon, 180 Ill. 349; Yocum v. Parker, 134 Fed. 205; Yocum v. Parker, 130 Fed. 722; Doe v. Considine, 6 Wall. 458; Thornhill v. Hall, 2 Clark & Fin. 22; 3 Jarman on Wills (5 Ed.), 704. (a) Indeed, this is declared to be a settled rule of property in

this State. Cornet v. Cornet, 248 Mo. 223. (3) The contingent remainder limited by the will of Louis Bernero, deceased, to the children of Manuello Bernero, became a vested remainder in fee, in plaintiff, Louis Bernero, at his birth, and when the prior life estate of Theresa Bernero and the prior life estate of Manuello Bernero were out of the way, plaintiff's vested remainder in fee vested in possession. Collins v. Whitman, 222 S. W. 842; Barkhoefer v. Barkhoefer, 204 S. W. 909; Deacon v. Trust Co., 271 Mo. 687, 689; Tindall v. Tindall, 167 Mo. 218; Gates v. Seibert, 157 Mo. 254; Waddell v. Waddell, 99 Mo. 338; Jones v. Waters, 17 Mo. 587; Tiedeman on Real Property (2 Ed.), secs. 412, 413; 2 Washburn on Real Property (4 Ed.), 555, 556, 561; Fearne on Remainders, p. 317; 10 U. S. Encyc. of Cases, pp. 646, 647; Manhattan R. E. Co. v. Cudlipps, 80 N. Y. App. Div. 532; Moore v. Lyons, 25 Wend. 119; Savings Bank v. Lees, 176 Pa. St. 402; R. S. 1909, sec. 578. (4) Upon the death of Louis Bernero, deceased, a remainder for his own life vested in Manuello Bernero, subject to the preceding particular (life) estate of Theresa Bernero. Manuello Bernero's vested remainder for life was subject to defeat by his death before Theresa; while the remainder for his own life vested in Manuello Bernero upon the death of the testator, Louis Bernero, it did not vest in possession and was defeated by his death. The words "if he shall survive her" by the clear tenets of construction, after words giving Manuello Bernero a vested life estate, have reference only to his enjoyment of the estate—or vesting of possession—and not to the vesting of his title. Gray on Perpetuities (2 Ed.), secs. 100, 102, 103, 108; Johnson v. Loan & Tr. Co., 224 U. S. 238; Williams on Real Prop. (17 Int. Ed.) 397, 415, 416; 2 Washburn, Real Prop. (4 Ed.) pp. 545, 568, 575; 10 U. S. Encyc. of Cases, p. 647; 6 Albany Law Journal, 361; Collins v. Whitman, 222 S. W. 842; Warne v. Sorge, 258 Mo. 171; Collier v. Archer, 258 Mo. 389, 390; Barkhoefer v. Barkhoefer, 204 S. W. 906; Deacon v. Trust Co., 271 Mo. 687, 689; Tindall v. Tindall, 167 Mo. 218; Byrne v. France, 131 Mo. 639; Chew

v. Keller, 100 Mo. 362; Byrnes v. Stillwell, 103 N. Y. 453; Temple v. Sammis, 97 N. Y. 526; Embury v. Sheldon, 68 N. Y. 227; Livingston v. Green, 52 N. Y. 118; Johnstone v. Valentine, 4 Sandf. 36; Chew's Appeal, 37 Pa. St. 23; Munderson v. Lukens, 23 Pa. St. 31; Parker v. Ross, 69 N. H. 213; Crosby v. Crosby, 64 N. H. 77; Kennard v. Kennard, 63 N. H. 303; Pue v. Pue, 1 Md. Ch. 382; Gibbons v. Gibbons, 140 Mass. 102; Darling v. Blanchard, 109 Mass. 176; Blanchard v. Blanchard, 1 Allen, 223; Neilson v. Brett, 99 Va. 673; Brockelbank v. Johnson, 20 Beav. 205; More v. Lyons, 25 Wend. 119. (5) The death of Manuello Bernero before Theresa Bernero had no other effect upon the title of plaintiff, Louis Bernero, than to remove one preceding life estate, and thus bring his vested remainder in fee one step nearer possession. 1 Fearne, Contg. Rem. 510-517; Scatterwood v. Edge, 1 Salk. 229; Pennington v. Pennington, 70 Md. 418; Ege v. Herring, 108 Md. 391; Johnson v. Harrelson, 6 S. C. 336; Mowatt v. Carrow, 7 Paige, 328; Trust Co. v. Hagencamp, 191 N. Y. 281; Williams v. Jones, 166 N. Y. 522; Matter of Miller, 161 N. Y. 71; Crozier v. Bray, 120 N. Y. 366; Wager v. Wager, 96 N. Y. 164; McLean v. Freeman, 70 N. Y. 81; Dunnings v. Marshall, 23 N. Y. 366; Moris v. Beyea, 13 N. Y. 273; Robinson v. Orphan Asylum, 123 U. S. 702; Mathis v. Hammond, 6 Rich. Eq. 121; Smith v. Hance, 11 N. J. L. 255; Prescott v. Prescott, 7 Metc. 141; 24 Am. & Eng. Ency. (2 Ed.) 411, 453; Statham v. Bell, 1 Cowp. 40; Gibbon v. Gibbon, 40 Ga. 562; Horton v. Barrett, 22 Me. 257; Mebane v. Womac, 2 Jones Eq. 293; Simmons v. Gooding, 5 Ired. Eq. 382; Jones v. Westcomb, 1 Eq. Cas. Abr. 245, par. 10. (6) The provisions of the will of Theresa Bernero are invalid and void because in conflict with the Rule Against Perpetuities: Said provisions of said will of Theresa Bernero violate the rule prohibiting what has been termed a double possibility, and they are therefore invalid, and defendants took no interest in the land described in plaintiff's second amended petition by virtue of said will. (a) The remoteness of an appointment depends upon its

distance from the creation and not from the exercise of the power. Cox v. Dickson, 256 Pa. St. 510; Gray, Rule Against Perpetuities, 473. (b) It is settled law that a devise or conveyance of land, which entitles the unborn child of an unborn child to take, is invalid. Whitby v. Mitchell, L. R. 42 Ch. Div. 494; Whitby v. Mitchell, L. R. 44 Ch. Div. 85; Frost v. Frost, 43 Ch. Div. 246; In re Nash, L. R. Ch. Div. 1910, vol. 1, p. 1; Lockridge v. Mace, 109 Mo. 166; Shepperd v. Fisher, 206 Mo. 208; Buxton v. Kroeger, 219 Mo. 271, 275; Bradford v. Blossom, 207 Mo. 233. (c) And this rule applies to equitable estates. In re Nash, L. R. Ch. Div. 1910, vol. 1, p. 1; Gray, Rule Against Perpetuities (3 Ed.), sec. 69, 245c, 323; Buxton v. Kroeger, 219 Mo. 273; Bradford v. Blossom, 207 Mo. 233. (d) The fact that no child has been born to Clotilda Longinotti since the death of Theresa Bernero is immaterial. Buxton v. Kroeger, 219 Mo. 275; Shepperd v. Fisher, 206 Mo. 239; Rozier v. Graham, 146 Mo. 360; Sears v. Russell, 8 Gray, 98. (7.) The court erred in admitting evidence tending to show that Clotilda Longinotti had passed the age when she would no longer bear children. Rozier v. Graham, 146 Mo. 360. (8) For the purpose of the rule against perpetuities, a woman is considered capable of child-bearing so long as she lives. Rozier v. Graham, 146 Mo. 360; Flora v. Anderson, 67 Fed. 182; In re Dawson, 39 Ch. Div. 155; List v. Rodney, 83 Pa. St. 483.

*Albert Arnstein, Jourdan, Rassieur & Pierce, Bryan, Williams & Cave, John J. O'Brien,* and *John M. Goodwin* for respondents.

(1) Plaintiff, the child of Manuello, takes no interest in the realty in question, because Manuello, his father, did not survive Theresa, the wife of Louis. (a) The law is: That where an estate for life is made to depend on the contingency of the object of it being alive at the period when the preceding estate determines, limitations or interests consecutive on that estate are contingent on the same event. 2 Jarman on Wills (6 Ed.), p. 1390;

Oetjen v. Diemmer, 115 Ga. 1005; Simmons v. Gooding, 40 N. C. 382; Clarke v. Johnson, 8 Wall. 493; Bouknight v. Brown, 16 S. C. 155; Brinkerhoff v. Green, 122 N. Y. S. 481; Smith v. Harbinson, 228 Pa. St. 584; Catley v. Vincent, 15 Beav. 198; Mayer v. McCracken, 245 Ill. 584; Miller v. Chapman, 24 L. J. Ch. 412. (b) The use of the words: "If he shall survive her" after the granting of Manuello's life estate in the first clause must relate to the other limitations, because it is of no use or value as only applied to Manuello's state. Armour v. Frey, 226 Mo. 646, 674. (2) The court in this case ought not to supply or interpolate into the will of Louis Bernero the words suggested by the appellant. (a) It is elementary that a court will not interpolate words in a will unless there is enough expressed in the will to show that the testator intended the disposition to be made which the supplied words will accomplish. Robinson v. Crutcher, 209 S. W. 104; Nolan v. Nolan, 154 N. Y. S. 355; Smith v. Trust Co., 105 Atl. 534; Jordan v. Jordan, 281 Ill. 421; Bender v. Bender, 226 Pa. 607; Matteson v. Brown, 33 R. I. 339; Clark v. Rathbone, 221 Mass. 574; Child v. Child, 185 Mass. 376; Maguire v. Maguire, 110 La. 279; Graham v. Graham, 23 W. Va. 36; Boston S. Dep. Co. v. Buffum, 186 Mass. 242; Todd v. Tarbell, 187 Mass. 480; Neal v. Hamilton Co., 70 W. Va. 250. (b) It must plainly appear with absolute certainty that the particular words claimed to be omitted were in fact omitted. Smith v. Trust Co., 105 Atl. 534. (c) In the interpretation of a will the court cannot indulge in a conjecture as to the supposed intention of the testator or add words to his will to express an intention which is not plain and unmistakable. Jordan v. Jordan, 281 Ill. 421. (d) Courts cannot determine by conjecture that a testator has left out words in his will and undertake to rectify such omission. Matteson v. Brown, 33 R. I. 389. (e) A court cannot supply words in a will to give effect to an intention which the testator has not expressed by the words used by him. Child v. Child, 185 Mass. 376. (f) Missing words can be supplied by the court only when the words used by the testator show by

287 Mo.—39

necessary implication what the missing words are. Boston S. Dep. Co. v. Buffum, 186 Mass. 242; Child v. Child, 70 N. E. 464. (g) When a testator in the disposition of his property overlooks the particular event or matter which, had it occurred to him, he would probably have corrected against, a court will not employ or insert the necessary clause for the purpose of supplying the omission. Neal v. Hamilton Co., 70 W. Va. 250. (h) Although the inference or intention be more or less strong, yet if not necessary or indubitable, the court will not aid the supposed intention by adding or supplying words. Graham v. Graham, 23 W. Va. 36. (3) None of the authorities cited by counsel for appellant are controlling in this case. (a) In the construction of wills adjudicated cases of this or other courts in construing the will of some other person carries no great weight, especially if the words and tenor of the whole will are not absolutely indentical. Page on Wills, sec. 354; 1 Schouler on Wills (5 Ed.), p. 583, sec. 463; Clark v. Boorman, 18 Wall, 493; In re Collier's Will, 40 Mo. 321; Chew v. Keller, 100 Mo. 373; Preston v. Brant, 96 Mo. 556; Smith v. Bell, 6 Peters, 68; Armour v. Frey, 226 Mo. 665. (b) When all of the authorities cited by appellant in support of his proposition to interpolate words in the Bernero will are considered, it will be found that none of them are in any wise similar to the cause at bar. (4) There is no conflict in the provisions of Item 5 of the will of Louis Bernero and the plaintiff is not given an absolute fee in this property upon his birth in clear and decisive terms. Gibson v. Gibson, 239 Mo. 490; Cox v. Junes, 229 Mo. 67. (5) The proposition that a clear decisive gift to one in fee cannot be cut down by subseque.t language in a will unless such language is equally clear and decisive, has no application in this case. (a) It is the duty of the court to construe the will of Louis Bernero so that every provision thereof will stand and be effective. Gibson v. Gibson, 239 Mo. 490; Freeman v. Maxwell, 262 Mo. 13; Snyder v. Kloepple, 270 Mo. 389. (b) It is a necessary corollary of the rule that a clear, distinct devise

may not be cut down by subsequent ambiguous and uncertain words, that subsequent clear and distinct language must be given effect. Middleton v. Dudding, 183 S. W. 443. (6) When a testator provides in his will that the title to property shall vest at a particular time, this language is binding upon the court and it cannot be held that he intended a vesting at some other period, other than is set forth. (a) There is no clear and decisive gift in the plaintiff as claimed. (b) The language of the will creating a power of appointment in Mrs. Bernero, if she survive Manuello is most clear and distinct; in fact, it is the most distinctive and assertive portion of the will. (c) It is the duty of the court to so construe the first clause of the Louis Bernero will as not to make a conflict with the second clause creating the power of appointment and occasion the necessity of interpolating words. (7) The plaintiff cannot claim that the will of Theresa Bernero violates the rule against perpetuities or any alleged rule that the gift to an unborn child of an unborn child is void. (a) By his pleadings the plaintiff has made no claim to any interest in this real estate as the right heir of Louis Bernero and he is bound by his pleadings. Brandt v. Bente, 177 S. W. 377; Wimpey v. Lawrence, 208 S. W. 54; Development Co. v. Barnes, 216 S. W. 735; Inv. Co. v. Gallagher, 188 S. W. 151; Noble v. Cates, 230 Mo. 189. (b) Plaintiff is not a right heir of Louis Bernero within the meaning of the provisions of Item 5 of his will. Reinders v. Koppelman, 94 Mo. 338; Clarkson v. Hatton, 143 Mo. 47; Hockaday v. Lynn, 200 Mo. 456; Note in 5 A. S. R. 1280. (c) Plaintiff cannot claim through Augustino Bernero as a right heir, because Augustino elected to accept and did accept a legacy under the provisions of the will of Theresa Bernero. Albert v. Albert, 68 Md. 352; Graham v. Whitridge, 57 Atl. 609; Paulus v. Besch, 127 Mo. App. 255; Fox v. Windes, 127 Mo. 502; Keene v. Barnes, 29 Mo. 377; Stone v. Cook, 179 Mo. 546; O'Reilly v. Nicholson, 45 Mo. 161; Young v. Biehl, 77 N. E. 406; Sorenson v. Carey, 104 N. W. 958; Werner's Administration, sec. 461, p.

1016; Pemberton v. Pemberton, 29 Mo. 408. (d) Therefore, even if it be assumed that plaintiff has, by his pleadings, properly presented a claim as a right heir to any interest in this real estate, yet by reason of the foregoing he must fail in such a claim, and having no interest in the controversy and being unable to profit thereby, he cannot be heard to assert any such right, even though her will were invalid. Barkley v. Donnelly, 112 Mo. 561; 40 Cyc. 1847, sec. 3; State ex rel. v. McQuillan, 246 Mo. 674. (8) The question of whether the will of Theresa Bernero in creating the trust in question violates the rule against perpetuities is out of this case. (9) Plaintiff cannot urge upon the consideration of this court that the will of Theresa Bernero is void in the exercise of this power because it is possible thereunder for the child of an unborn child to take an interest in the income and *corpus* of the trust. (a) Not having made any such claim by his pleadings and not having presented any such question to the lower court, the plaintiff cannot be heard here upon such a contention. Buxton v. Kroeger, 219 Mo. 224; Noble v. Cates, 230 Mo. 189; Brandt v. Bente, 177 S. W. 377; Wimpey v. Lawrence, 208 S. W. 54; Inv. Co. v. Gallagher, 188 S. W. 151. (b) The only cases in this country that can be found which have passed upon the proposition whether or not a gift to the child of an unborn child is void, irrespective of when it vests, decided that question against the plaintiff. Brown v. Brown, 86 Tenn 277; Lorrilard v. Coster, 5 Paige, 172. (10) Plaintiff not having shown any title in himself and the undisputed evidence showing that defendants were in possession, the decree should be affirmed, because mere possession in the defendants as against plaintiff who has no title is sufficient. Wilden v. St. Paul, 12 Minn. 192; Ford v. Belmont, 69 N. Y. 567; Child v. Morgan, 51 Minn. 116; Knight v. Alexander, 38 Minn. 384; Steele v. Fish, 2 Minn. 153; Mitchell v. Trowbridge, 47 Colo. 6; Currier v. Thompson, 70 Vt. 250; McGovern v. Mowery, 91 Cal. 383. (11) On appeal in an equity case or a case tried by a court without a jury errors in the admission of testimony

will not be regarded. The court can reject, consider, weigh and decide on the competent proof. Hanson v. Neal, 215 Mo. 256; Donaldson v. Donaldson, 249 Mo. 228; Home Tel. Co. v. Carthage, 236 Mo. 644. (12) A decree in a quiet title action only settles matters to the date of the rendition thereof and then only between the parties and their privies who are parties to the record. 32 Cyc. 1384, sec. b; Stone Co. v. Oman, 134 Fed. 441. (13) In a quiet title action this court will only concern itself with the present rights of the immediate parties before it. It will leave the rights of unborn persons and matters to be determined by future events to a future date. Young v. Hyde, 255 Mo. 510.

DAVID E. BLAIR, J.—The record in this case on 'appeal was lodged in Division One of this court and on assignment fell to one of the commissioners of that di-vision. His opinion reversing and remanding the judg-ment of the trial court was not adopted as the opinion of Division One and the cause was transferred to Court in Banc and has been here argued and sub-mitted. We adopt *in toto* the statement of facts and contentions of the parties made by the learned commissioner in his opinion, which is as follows:

Statement.

I. "Appeal from the Circuit Court of the City of St. Louis. Suit to quiet title. This case involves the construction of the will of Louis Bernero, who died in St. Louis on August 8, 1904. Plaintiff claims title under said will, but lost in the lower court. Said Louis Ber-nero left surviving him his widow, Theresa Bernero, also Manuello Bernero (the father of plaintiff), whom the testator refers to in his will as his adopted son. They had no children of their own. At one time he was engaged in the wholesale cigar business in St. Louis with his brothers Joseph and Augustino, who, however, returned to their native country, Italy. This was prior to 1880. In 1880 Louis Bernero and his wife visited his brother Augustino in Italy. Augustino was married at the time and had a large family of children, amongst others the

said Manuello, who was then about three years of age. By agreement with his parents, Louis Bernero agreed to take said Manuello back to the United States with him and raise and educate him as his own child—in effect, to adopt him. In pursuance of his agreement, he and his wife returned to St. Louis, taking Manuello with them. They raised, educated and treated him as their son and he lived with them until the death of Louis Bernero in 1904. Manuello was then about twenty-seven years old and single. The relations between him and the testator seem always to have been amicable and affectionate. Manuello and the widow were made executors of his will without bond. The two brothers of Louis Bernero also survive him. On November 30, 1904, after the death of said Louis, Manuello married Lorraine Thompson, the mother of the infant plaintiff, Louis Bernero, and the curatrix of his estate. Shortly after the death of Louis Bernero the elder, his widow Theresa, by a written document dated April 10, 1905, formally adopted said Manuello as her child. This document recited his parol adoption by Louis Bernero and his wife in 1880. Manuello Bernero died April 4, 1910, leaving the infant plaintiff Louis, then about four or five years of age, as his only child and his widow Lorraine him surviving. On July 15, 1911, a little over a year after Manuello died said Theresa departed this life, leaving a will dated June 25, 1910.

"At the time of his death and when he made his will, the property of said Louis Bernero, consisting mostly of real estate, but some $30,000 or $40,000 in money, was probably worth $400,000 or $500,000. It was all in the City of St. Louis. The property involved in this controversy is a piece of business property in Block 172 of said city, at the southwest corner of Washington Avenue and Ninth Street and is particularly described in paragraph five of the will of said Louis Bernero. At the time aforesaid said property in question here was worth some $200,000 and constituted about one-half in value of his estate, or about as much in value as was given

to the widow absolutely by his will. When said Theresa Bernero died her property consisted, so far as shown by the record, of the property she had received from her husband's estate. She left surviving her besides the plaintiff, the child, and Lorraine Bernero, the widow of her adopted son Manuello, her sister Clotilda Longinotti and the eleven children of her said sister mentioned in her will and who, with the defendant trust company, are the defendants in this case. Said Clotilda with her family had for many years lived in the State of Arkansas. There was also a niece, the daughter of a brother mentioned in her will.

"By his will Louis Bernero first made certain specific bequests to charity aggregating $1200. He next devised to his brother Joseph a lot at the northwest corner of Ninth and Morgan Streets in St. Louis, which is not treated by the parties as of great value. The remaining portions of his will are as follows:

"'5. I give and devise unto my beloved wife, Theresa Bernero, the realty owned by me in block number one hundred and seventy-two (172) of said City of St. Louis, at the southwest corner of Washington Avenue and Ninth Street, having a frontage of forty-nine (49) feet six (6) inches, more or less, on the south line of Washington Avenue, by a depth southwardly along the west line of Ninth Street to the north line of St. Charles Street, and bounded west by property now or late of the Tutt estate; to have and enjoy for and during the term of her natural life, and at the time of her death the same to pass to our adopted son, Manuello Bernero, if he shall survive her, to have and enjoy during his natural life, and at his decease to pass to and vest in fee in his children if any he have, or their descendants, but in default or failure of such direct heirs, children or grandchildren him surviving, then at the time of his death the title to said realty in fee shall pass to and vest in my right heirs; if, however, my said wife shall survive said Manuello, then she, said Theresa Bernero is hereby empowered to devise said realty as she shall see fit, or if she shall fail to make such testa-

mentary disposition of same, then said realty, upon her death, shall vest in my right heirs, if she shall survive said Manuello; I authorize and empower my said wife during her .lifetime, and if said Manuello shall survive her and enter upon the enjoyment of said realty, then said Manuello during his lifetime, to lease said realty thus bequeathed to them for life as aforesaid, successively, on such terms as they severally deem proper, each exercising such right during her or his life-tenancy, for leasehold periods not exceeding twenty-five (25) years each.

" '6. I give and bequeath unto our faithful domestic, Louisa Gazzolo, the sum of Five Hundred Dollars.

" '7. All the rest, residue and remainder of my estate, real and personal, wheresoever and whatsoever, I give and devise unto my beloved wife as her absolute estate, free from conditions or restrictions.

" '8. I nominate and appoint my said wife and said Manuello Bernero executors of this my last will and testament, and in the event of the death of either before my own decease, then I constitute the survivor sole executor hereof; I desire and direct that no .bond be required from them, or either of them for the due administration of my estate, and I further empower and authorize them, or the survivor of them, as such executors or sole executor to sell and dispose of any of my realty, excepting said parcels situated in blocks numbers one hundred and seventy-two (172) and one hundred and seventy-five (175), specifically devised as hereinabove set forth.

" 'In Testimony Whereof, I have hereunto set my hand at said City of St. Louis, this nineteenth day of May, A. D. 1900.

" 'Louis Bernero.' "

"Augustino Bernero, the brother of the deceased husband of said Theresa and the father of Manuello, with several other sons and daughters, survived the said Theresa. By her will she bequeathed to said Augustino the sum of $2000, and to each of his sons and daughters, the same amount, aggregating in all $16,000. She also made several charitable bequests aggregating $2,500. By her will she

bequeathed to the plaintiff Louis Bernero (or to a trustee for him) the sum of $10,000. The will of said Theresa gave her niece, the daughter of a brother, $3000 and to a former servant, $200. Her said will also contained a provision, that if any of the beneficiaries should either directly or indirectly contest her will, or attempt to have it set aside, or its provisions defeated, such beneficiary should take nothing under her will, but the bequest made in his or her favor should be annulled. By the eleventh clause of her will said Theresa devised the property in question to the defendant trust company in trust for the eleven children of her sister Clotilda, on certain terms and conditions. This was followed by a residuary clause, giving her said sister Clotilda the residue of her estate.

"Prior to this suit, the plaintiff, by next friend, instituted a suit to contest the will of said Theresa in which final judgment was rendered sustaining said will. No appeal was taken.

"In the case at bar the lower court found and decreed that plaintiff had no interest in the property sued for, but that it belonged to defendants, the children of said Clotilda Longinotti, and their trustee, defendant trust company, under will of Louis Bernero and of Theresa his widow.

"The lower court filed a written memorandum of its opinion which, so far as regards the construction of the will of said Louis Bernero, is as follows:

" 'I can see nothing to be accomplished by filing an extended memorandum in connection with my decision in this case.

" 'After careful consideration of the arguments of counsel in the case of those portions of the briefs filed that appeared to me at all relevant to the issues raised, my mind is not left in any doubt but that under the construction that must be placed on the language of this will, the plaintiff has no interest or estate in the property in question.

" 'Plaintiff's counsel begin with the proposition that there is an apparent inconsistency arising from the language of the will. There is an inconsistency only if

the first part of the paragraph in question is construed as plaintiff would have it construed. Taking this clause by itself the construction plaintiff contends for is a forced construction, albeit one that might be resorted to, if necessary, to harmonize it with other provisions in the will. The other clauses of this paragraph are plain, exceedingly plain. No authority is cited, or can be cited, justifying the placing of a forced construction on one provision of a will, or other instrument for the purpose of creating an inconsistency. Consider what the result of the adoption of such a principle would be. A will could hardly be drawn without some clause in it susceptible of different constructions. Disregarding the intent of the testator as disclosed by other provisions of the will, a construction would be placed on it out of harmony with the other provisions. Then the court would have to resort to interpolations or forced constructions of such other provisions to avoid inconsistencies, with the result that the effect given to the will would be very different from the intent of the testator.

" 'It is to avoid any such result that the courts take as one of the fundamental rules in construing wills that the whole instrument, including all its provisions and the general scheme of the testator as disclosed thereby, must be considered in construing each and every provision thereof.

" 'Applying this rule to the will in question, it is apparent to me that the remainder to the children or descendants of Manuello Bernero was made conditional upon Manuello surviving his mother—that is, upon his being alive at the time of her death.

" 'The suggestions of plaintiff's counsel—ingenious as they are, and plausibly presented—have not raised a doubt in my mind as to the effect of the language of this clause of the will.'

"Moving for a new trial without avail, the plaintiff appealed to this court.

II. "Appellant's learned counsel contended below and contend here, that by the fifth clause of the will of Louis

Bernero, the plaintiff, as the only child of Manuello Bernero, the adopted son of said Louis, the said Manuello and Theresa, the widow of said Louis Bernero being dead, was the owner in fee simple and also entitled to the possession of the property in dispute. That the whole will of said Louis Bernero, viewed in the light of his circumstances and family connections at the time he wrote his will, satisfactorily shows an intention to make the plaintiff the owner of the fee in said property upon the expiration of the successive life estates given to his father and adoptive grandmother by said fifth clause. That to carry out such intention thus ascertained the court must, if necessary, interpolate or imply the words, 'and he leaving no children,' or 'and he leaving no issue,' after the word 'Manuello' in the first and last parts of the provision of the said fifth clause giving the widow power of appointment concerning said property. Otherwise, said fifth clause would be repugnant to itself and defeat the intent of the testator, as shown by the whole of said clause and will, which was to devise said property to the children of said Manuello at his death, if any he should have, without regard to whether he survived the testator's widow or she survived him.''

*Contentions of Appellant.*

III. ''The respondents' learned counsel say, there is no repugnancy between the prior language giving the children their estate and the latter provision giving the widow the power of appointment. That by virtue of the prior language the children of Manuello were only to receive an estate on the contingency that their father survived his fostermother, which did not happen. That this is too plainly and repeatedly written in the will to be gainsaid and is clearly the true intent and meaning of the testator, as shown by the whole and every part of the will and surrounding circumstances. That the perfectly clear language of the last provisions giving them nothing, but giving the widow the power of appointment in the event she survived their father, is in harmony with and

*Contentions of Respondents.*

not repugnant to the language of the prior gift to the children and makes clear any uncertaintly as to the testator's intent in such prior language to give said children the estate only upon the condition and contingency that their father survived his foster-mother. Hence, plaintiff has no interest in the property in question.''

IV. The learned Commissioner then proceeded in his opinion to state many reasons why the will of the testator Louis Bernero should be construed as contended for by appellant, and came to the conclusion that the interest of the child Manuello was not contingent on Manuello surviving Theresa, but became a vested remainder which could not be defeated by the subsequent provision in paragraph five of testator's will, giving Theresa power of testamentary disposition of the property in case she survived Manuello. With this conclusion the majority of the judges are not in accord.

*Construing Wills: Interpolating Words.*

Appellant's counsel count much on the English case of Abbott v. Middleton, reported in 21 Beavan, 143, as decided by the Master of Rolls, and in 7 House of Lords Cases, 68, as decided on appeal. The will in that case provided for an annuity of two thousand pounds to testator's wife, made provision for a daughter and grandchildren and made the son residuary legatee and provided that on the death of the widow the sums provided for her annuity should become the property of the son during his life, and then the principal sum to go to his children, '' 'but in case of my son dying before his mother, then, and in that case, the principal sum to be divided between the children of my daughters, the deceased Jane Ricketts and Mary Paxton, and of my now surviving daughter, Eliza Middleton (should she leave any issue), in equal portions to each.' ''

The Master of Rolls, at page 149, said:

''In my opinion, the two clauses of this sentence, as they stand, are inconsistent and repugnant. The first branch gives an estate to the children, the second

takes it away, and the introduction of the words 'without leaving a child' after the word 'dying,' in the second branch of the sentence, would, in my opinion, make the two branches of the sentence uniform and consistent.''

When the case came before the House of Lords on appeal, the Lord Chancellor at page 83, said:

'' 'That where there is a clear gift, it can only be altered and retracted by the most plain and unambiguous and unequivocal words, and the court will, *in dubio,* justly prefer that construction of any subsequent clause which will make it consistent with the intention plainly expressed in the preceding part. . . .

'' 'Here there is, first, a plain and unequivocal gift, and then there are words immediately following which at once produce an inconsistency, and therefore an ambiguity in the dispositions of the will.' ''

Lord St. Leonards, concurring, at page 92, said:

''You are not at liberty to transpose, to add, to subtract, to substitute one word for another, or to take a confined expression and enlarge it, without absolute necessity. You must find an intention upon the face of the will to authorize you to do so. . . .

''And we must stop there with this observation, that the property is actually given without any doubt or ambiguity to the son's children, so that if it is to be taken away from the children we must find clear words to effect that object.''

The interpolation of words in the Abbott case was sustained on the ground that there was a clear gift to the son and his children and the subsequent provision was repugnant to that gift and tended to cut it down. It may be noted in passing that Lord St. Leonards at the outset admonished their Lordships ''that 'hard cases make bad laws,' and I, therefore, made a covenant with myself to guard myself as much as I could and to keep within what I consider to be the strict rules of law applicable to a case of this kind.'' Both the Lord Chancellor and Lord St. Leonards expressed themselves as having no moral doubt as to the testator's intention.

Appellant cites Nichols v. Boswell, 103 Mo. 151, l. c. 158, wherein MACFARLANE, J., quoting from a New York case, said:

" 'Where one estate is given in one part of an instrument in clear and decisive terms, such estate cannot be taken away, or cut down, by raising a doubt upon the extent, or meaning, or application of a subsequent clause, or by inference therefrom, nor by any subsequent words that are not as clear and decisive as the words of the clause giving that estate.' "

In that case this court interpolated in a will the words "undisposed of" to carry out the intention of the testator. The use of such words was employed only because the court found there had been a devise in "clear and decisive terms," which could not be defeated by subsequent words less clear and decisive.

So in Briant v. Garrison, 150 Mo. 655, the word "through" was substituted for "between" to prevent the defeat of the "manifest intention" of the testator. In McMahan v. Hubbard, 217 Mo. 624, words were supplied so "that the instrument may not perish and the manifest intent of the parties be not defeated by the palpable error of the scrivener." In Den, Nelson et ux. v. Combs, 18 N. J. L. 27, the words "under age and without lawful issue" were supplied to effectuate the evident intention of the testator and to prevent the defeat of the clear and definite devise made in the will. In Young v. Harkleroad, 166 Ill. 318, the words "without such heirs" were interpolated in the will there under consideration. Referring to the words used in the will it was said: "The remaining portion of the sentence (quoting) taken literally, directly contradicts what has just been said."

In Baker v. Estate of McLeod, 79 Wis. 534, the words "and left no issue" were supplied by the court where the evident intent of the testator was to guard sacredly the interests of his motherless child. The words used in the will would have cast the estate upon a stranger, rather than the child of the daughter where she

died without having attained the age of twenty-one. The court, at page 545, said:

"We fully agree with the statement of Mr. Justice ANDREWS that 'it may be safely assumed that, where a will is dictated under the influence of family relations, it would seldom happen that a testator would intentionally cut off the issue of a son or daughter from taking the share of the parent in his estate for the benefit of collateral objects.' "

In the very late case of Thornbrough v. Craven, 225 S. W. 445, decided November 20, 1920, and not yet officially reported, this court En Banc had before it for construction a will wherein the testator in one clause unconditionally devised his land to his widow and in a subsequent clause directed that the undisposed portion of his estate (at the death of his widow) should be divided among testator's brothers and sisters. In a contest over the land between the brothers and sisters of the testator and the collateral heirs of the testator's widow this court held that the heirs of the widow took the land under the rule that the prior clear and decisive grant could not be defeated or cut down by subsequent repugnant provisions in the will of vague and general character.

Numerous cases are cited by appellant which we have carefully examined. In an opinion of any reasonable length it is impossible even to refer to them. To discuss fully the cases cited by counsel on both sides would extend this opinion to the dimensions of a treatise. It will be found that in all these cases, as in the ones we have referred to, the facts were that in the wills under consideration either a clear and definite provision was followed by a repugnant or inconsistent provision, not equally clear and definite, tending to defeat or cut down the prior one, or the provision sought to be sustained by the actual words used was against the manifest intention of the testator, as gathered from the entire instrument, or the exact wording, of vague and uncertain meaning, would have resulted in a disposition of the property

devised utterly at variance with the natural instincts of the testator, such as the defeat of succession in title in the heirs of a favorite child of testator for the benefit of strangers. In no case which we have examined, where the meaning of the testator has been clearly and distinctly expressed in plain and unequivocal language, have the courts undertaken to supply or interpolate words not used by testator, however much the testator's disposition of his estate may have appealed to the court as hard and unnatural.

All this court can do, after an examination of said cases, is to turn back to the will before us and carefully examine all of its provisions. Probably no will ever drawn was exactly like the one before us, and cited authorities are persuasive only and not controlling, because of different states of fact. As one learned judge has expressed it, "no will has a twin brother." We must therefore study the provisions of Louis Bernero's will, guided by the general principles laid down by the courts and textwriters and in the light of the circumstances surrounding its execution, and all the time with the very highest regard for and closest attention to the language he employed.

*Testator's Intention Controls.*

The Legislature has laid down a fixed rule for our guidance in construing wills. Section 583, R. S. 1909 (Sec. 555, R. S. 1919), is as follows:

"All courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them."

The statute is only declaratory of well settled rules for construing wills laid down by the courts and expresses the common sense of the matter.

To give the will before us the meaning contended for by appellant, words not used by testator must be interpolated by us. The use of such words should never be resorted to except when clearly necessary to carry out the true intention of the testator and this intention must be gathered from the will itself and the whole of it

and not because the disposition of his estate made by testator appears to the court to be an unreasonable, unnatural or harsh one. We quote with approval the language of respondents' counsel in their brief and argument:

"The grave danger lies in the likelihood of making a new will for the testator thereby instead of construing the language the testator has used. From an examination of a large number of authorities it may be laid down as a general proposition that the will on its face must show some contradiction or repugnancy, or that it is incomplete. It must then further appear *from the face of the will itself* that the testator has inadvertently or unconsciously omitted certain words or language which are necessary to make his intention clear. It must next appear from the face of the will *what words or language have been omitted.* It must also appear from the face of the will that the testator *clearly intended to make a disposition which the supplied words will effectuate.*"

Appellant's fundamental error is in his assumption that Louis Bernero in one part of his will made an unconditional provision for the children of Manuello and then proceeded to provide for a contingency, to-wit, if Manuello should predecease Theresa, upon the improbable happening of which, that vested interest should be defeated. It is his contention that Manuello's children took a vested remainder in the property, independent of Manuello surviving Theresa. The will is not fairly susceptible of such construction. In our opinion, in the plain, ordinary sense of the words used by testator, not only the life estate of Manuello, but also the remainder provided for in his children, were contingent upon Manuello surviving Theresa.

*Will Construed.*

After providing for a life estate in Theresa the will made the following provision with reference to the premises in controversy: *First,* if Manuello survive Theresa (a) life estate to Manuello (with power to execute twenty-five year lease); (b) the remainder in fee to Manuello's children; (c) if no children, then

287 Mo.—40

remainder to the right heirs of testator. *Second,* if Manuello does not survive Theresa, (a) right in Theresa to dispose of the property by will as she saw fit; (b) failure of Theresa to make such will, remainder to the right heirs of testator. Thus construed the will made provision for remainder in fee in the children of Manuello *only* on the contingency that Manuello survived Theresa. That contingency never having happened, the remainder never vested in Manuello's children. This construction gives meaning to all the words used by testator and it makes it unnecessary that words be supplied or interpolated. It gives full consideration to the whole will and indicates an intention of the testator entirely different from that contended for by appellant. It results in the conclusion that not only the life estate in Manuello, but the dependent remainder in his child, are entirely contingent on Manuello surviving Theresa. This construction is supported by the general rule laid down in 2 Jarman on Wills, (6 Ed.) 1390-91:

"When a contingent particular estate is followed by other limitations, a question frequently arises, whether the contingency affects such estate only, or extends to the whole series. The rule in these cases seems to be, that if the ulterior limitations be immediately consecutive on the particular contingent estate in unbroken continuity, and no intention or purpose is expressed with reference to that estate, in contradistinction to the others, the whole will be considered to hinge on the same contingency; and that, too, although the contingency relate personally to the object of the particular estate, and therefore appear not reasonably applied to the ulterior limitations.

"Thus, where an estate for life is made to depend on the contingency of the object of it being alive at the period when the preceding estates determine, limitations consecutive on that estate have been held to be contingent on the same event, for want of something in the will to authorize a distinction between them."

It was not unnatural for testator, in the event Manuello died first, to empower his wife, the companion of his

productive years, the sharer of the toil and economy of those years, and the partner in his prosperity, his confidante and adviser and whose devotion and fidelity he had no reason to question, to make final disposition of his estate after she was through with it. The wisdom of his decision to rely on her judgment to make a disposition of the remainder of his estate in the way that appeared to her as the wisest and most beneficent in view of the then existing circumstances, cannot be questioned by us. When testator died Manuello had not even married and he knew nothing of the character or disposition of the future mother of Manuello's children. It was entirely reasonable to suppose that testator intended to provide for just the contingency that eventually did happen, to-wit, that with Manuello dead, testator's widow might think it unwise to devise the property to appellant.

It is not the province of this court to rewrite the wills of testators in order to make them conform to our notions of the proprieties and equities of the situation. The objects of the bounty of a competent testator, after observing certain restrictions due to the marriage relation, are entirely within the discretion, even caprice, of the testator himself. It will not do for us to construe Louis Bernero's will in the light of Theresa's subsequent testamentary disposition or to say such disposition was contrary to the disposition the testator would have made had he been alive and in control of the estate at the date of Theresa's will. It is enough that she had the power. Had Theresa made no testamentary disposition whatever of the estate, it would have availed appellant nothing since his interest in expectancy as a child of Manuello never became vested.

V. Appellant contends that the will of Theresa. Bernero is invalid under the rule against perpetuities.

Construing Wills: Testator's Definition of Words Controls.

As we understand paragraph five this question can only be raised by a right heir of testator Louis Bernero. If appellant is not a right heir of such

testator, within the meaning of his will, he is not in a position to urge such alleged invalidity.

Respondents insist that the case was tried below on the theory that appellant claimed as a child of Manuello Bernero and that he cannot now be heard to say that he has some right, title or interest in the property here involved as a right heir. It must not be forgotten that appellant's petition asks that the title to the property be quieted as to respondents and that respondents have asked similar relief as against appellant. We think the court is therefore required to pass on all questions affecting the title to the property as between the parties. It is true appellant bases his claim to the property primarily on his status as a child of Manuello claiming title vested in him by virtue of the first clause of paragraph five of the will. This claim we have disallowed. If appellant can claim as a right heir, it must be under the second clause of paragraph five. That clause reads "if, however, my said wife shall survive said Manuello, then she, said Theresa Bernero is hereby empowered to devise said realty as she shall see fit, or if she shall fail to make such testamentary disposition of same, then said realty, upon her death, shall vest in my right heirs, if she shall survive said Manuello."

If we assume for the sake of the argument that the will Theresa made is invalid because violative of the rule against perpetuities, then the same situation exists as if she had failed to make testamentary disposition of the realty. In that event, Theresa being dead, the title vested in the right heirs of Louis Bernero.

We are convinced that appellant is not a right heir of Louis Bernero, the testator, within the meaning of the will. Testator has defined the term "right heirs" for us. Regardless of the meaning of that term in ordinary usage, appellant is expressly excluded by the very wording of the will. The line of succession in the title fixed by the testator under clause one of paragraph five is as follows: First, Manuello for life, if he survive Theresa; second, the children of Manuello, if any he have,

or their descendants, "but in default or failure of such direct heirs, children or grandchildren him surviving, then at the time of his death the title to said realty in fee shall pass to and vest in my right heirs." The existence of children of Manuello at his death precluded any interest in the right heirs of testator and the use of the term "right heirs" in that connection clearly shows that appellant is not a right heir as that term was used by testator. Testator uses the words "right heirs" in the same sense in the second clause of paragraph five. Once having defined the term, the courts will give it the same meaning whenever used in the same instrument, unless it has been subsequently defined otherwise.

Appellant has taken the position in his brief that the term "right heirs" means the same thing in both instances where it is used by testator. We quote from the foot of page 42 of appellant's statement, brief and argument, as follows:

"There is a repugnancy between the provisions of the foregoing devise as written. . . . On the other hand the first part vests the title in the right heirs of the testator *only* if Manuello leaves no issue surviving him, while the second part vests the title in the right heirs, whether Manuello leaves issue or not."

Clearly no repugnancy could exist on that account, unless the words were used in the same sense in both cases. We are further supported in this view by appellant's counsel. We quote from page 7 of appellant's Reply to Argument of the Guardian *ad litem* of Corinne Goodwin, et al., as follows:

"It clearly appears by this provision that the *Right Heirs* meant by the testator were the testator's collateral heirs, and not the descendants of Manuello, and that the testator intended to classify the '*Right Heirs*' by themselves; of course, the '*Right Heirs*,' meant by the testator in the second part of Clause 5, of his will, were the same class, or '*Right Heirs*,' referred to in the first part.

But it may be said that Augustino Bernero, the natural father of Manuello, is a right heir of Louis Bernero

and that appellant may have some interest or title on that account. Sufficient answer to such contention is found in the fact appearing of record that Augustino Bernero accepted a bequest under the will of Theresa Bernero and elected to take thereunder and thereby accepted the terms thereof and for himself and his heirs thereby forever waived any claim against the validity of Theresa's will. [Wood v. Conqueror Trust Co., 265 Mo. 511.]

Appellant is not entitled to claim as a right heir of Louis Bernero and is not in a position in this case to question the validity of Theresa's will. As to him it is a valid will whether it violates the rule against perpetuities or not. This makes an examination of the question of the validity of her will unnecessary. As against appellant, respondents were entitled to have their title quieted.

Finding no error in the record we conclude that the judgment of the trial court should be affirmed. It is so ordered. All concur except *Higbee, J.*, who dissents in separate opinion, and *Woodson, J.*, who dissents and concurs in separate dissenting opinion of *Higbee, J.*

HIGBEE, J. (dissenting).—In the year 1880, Louis Bernero and his wife, Theresa, who were childless, went to Italy to visit his two brothers. He induced his brother, Augustino, who had eleven children, to let him have the youngest child, Manuello, three years of age, whom he and his wife agreed to adopt and bring up as their own child. After the death of Louis Bernero in 1904, the widow consulted an attorney who advised her to execute a deed of adoption. Mrs. Bernero insisted that there was no need of that because Manuello was the son of Louis, that Louis had adopted him in the old country. The attorney advised that as there was no record of the adoption here she had better have the deed. She accordingly executed a deed adopting Manuello as her son, which recited that she and her husband, Louis Bernero, adopted him in Italy in 1880 when he was three years of age, and brought him to their home in St. Louis; that he has ever since been educated and supported by them and lived with them as their legally adopted son and been so recognized by them, and has done

*Statement.*

and performed all the duties of a child. This deed, executed in proper form April 10, 1905, was duly signed, acknowledged and sworn to by Theresa and Manuello, and recorded.

Every circumstance in the case indicates that Louis and Theresa Bernero received this child from his parents on a sacred trust, with feelings akin to the emotions that stirred the soul of Jochebed, the "Hebrew nurse," when she received from the Egyptian princess her own child with the injunction, "Take this child away and nurse it for me and I will give thee thy wages. And the woman took the child and nursed it."

The record shows that Louis Bernero loved Manuello as his own son. One of Bernero's intimate acquaintances testified: "One time I talked to him; Mr. Bernero, what are you going to do when you got lots of money? You give some to Vincent and David and Tony Bernero (brothers of Manuello)? He says, No, I got Mannie; he is my son." Mr. Ghio, formerly a partner of Louis Bernero, testified: "About Manuello, he (Bernero) told me when he got hurt one time; he got kicked in the baseball or football, I believe. He said my son got kicked yesterday and I guess he is going to die, and he was crying; yes, sir." It seems that Manuello's death was the result of this injury.

I. The contention in this case is over the construction of paragraph 5 of the will. It disposed of real estate now estimated to be of the value of nearly $500,000. This paragraph falls naturally into two clauses. Clause 1 reads:

"I give and devise unto my beloved wife, (description) to have and enjoy for and during the term of her natural life, and at the time of her death the

**Will:** **Testator's Intention.** the same to pass to our adopted son, Manuello Bernero, if he shall survive her, to have and enjoy during his natural life, and at his decease to pass to and vest in fee in his children, if any he have, or their descendents, but in default or failure of such

direct heirs, children or grandchildren him surviving, then at the time of his death the title to said realty in fee shall pass to and vest in my right heirs."

Clause 2, including the words in parenthesis supplied, reads:

"If, however, my said wife shall survive said Manuello, (and he leave no issue) then she, said Theresa Bernero, is hereby empowered to devise said realty as she shall see fit, or if she shall fail to make such testamentary disposition of same, then said realty, upon her death, shall vest in my right heirs, if she shall survive said Manuello; I authorize and empower my said wife during her lifetime, and if said Manuello shall survive her and enter upon the enjoyment of said realty, then said Manuello, during his lifetime, to lease said realty thus bequeathed to them for life as aforesaid, successively, on such terms as they severally deem proper, each exercising such right during her or his life tenancy, for leasehold periods not exceeding twenty-five (25) years each."

Paragraph 7 devises substantially the residue of the estate, one-half of it in value, to his wife, Theresa.

By the first clause of paragraph 5, Louis Bernero plainly provided that Theresa, then well advanced in years, and his son Manuello should each have a life estate in the property; that Manuello's enjoyment of his life estate should be postponed until her death. At Manuello's death the remainder was to vest in fee in his children, "if he have any, or their descendents, but in default or failure of such direct heirs, children or grandchildren, him surviving, then at the time of his death" the fee was to vest in the right heirs of the testator. If Manuello had children, the remainder was to vest in them unconditionally at his death. If he had none, then it was to vest in the right heirs of Louis Bernero unconditionally.

If the doctrine of the majority opinion be sound, that Manuello's children should take the remainder only on the contingency that he survived Theresa, then it

follows that in the event he left no issue, testator's right heirs would take nothing under the will.

This theory of construction is irrational and does not accord with human experience. It was advanced in the case of RoBards v. Brown, 167 Mo. 447. George Brown, the testator, had three sons and one daughter, all married. He bequeathed one dollar to each of them. By the next clause he devised all of his real and personal property to his wife during her life or as long as she remained single, and added this express provision: "In the event my wife should not be living at my death, then in that event, I will that all my property, real and personal, be distributed as follows: To my daughter, Mary B. White; to my daughter-in-law, Mary V. Brown, wife of my son J. Van Brown; to my daughter-in-law, Delia A. Brown, wife of my son John J. Brown; and to my son, William G. Brown, each an undivided one-fourth part of my personal and real estate." The testator's wife survived him. The two sons, J. Van and John J., were insolvent. After the death of the testator, plaintiff bought the interest of John J. in the real estate devised at sheriff's sale. He contended that by the plain, positive terms of the will, the wife of John J. took nothing under the will because the testator's wife survived him. The court said:

"This construction must therefore be discarded and rejected, if any other construction is possible.

"The intention of the testator was plainly this; first, to prevent his sons' creditors reaching or sharing in his property; second, to provide for his wife for life, if she survived him and remained single; third, after his wife's death, whether before or after his will took effect, to provide for his children and their families, and to do it in such a manner as to exclude his sons' creditors from participating in any of his estate.

"This intention being plain, the only question remaining is, has the testator expressed it in such manner as not to vitiate his intention by using words and terms that violate some inflexible rule of law? It is argued that

the words: 'In the event my wife be not living at the time of my death,' etc., have this effect. Those words are wholly superfluous and meaningless, and the estates created by the will would be exactly the same and would take effect at exactly the same time, and upon the same contingencies if no such words were in the will. Thus a life estate was devised to the wife. If she survived her husband, that estate would take effect at his death, and continue during her life, and the fee-simple estate in remainder would not vest in the children or devisees until the termination of the life estate. On the other hand, if the wife died before the testator, the life estate to her could never vest, and the fee-simple remainder would take effect at once. Hence, the words, 'In the event my wife should not be living at my death,' etc., provide for no contingency that is not fully provided for by law, and, therefore, those words serve no purpose whatever and should be discarded.

"Neither do those words create a condition upon which the remainder in fee is to become operative. They are properly only words descriptive of when and not upon what condition the remainder in fee is to vest, which, as shown, is exactly what the law is without such words. [Skipwith v. Cabell, 19 Grattan, 758.]"

Let us again look at clause 1 of paragraph 5—"and at the time of her death the same to pass to our adopted son, Manuello Bernero, if he shall survive her, to have and enjoy during his natural life and at his decease to pass to and vest in fee in his children."

The intention of the testator is to avoid the vesting of a joint life estate in his widow and son and to make this clear he postpones the enjoyment of Manuello's life estate until his widow's death. The vesting of the remainder in Manuello's children is not conditioned on the contingency that Manuello should survive Theresa. That is not the condition upon which the disposition is to become operative, but the time when it is to become effective.

In Skipwith v. Cabell, 19 Grattan (Va.) 758, a codicil read: "In case of a sudden and unexpected death, I give the remainder of my property," etc. The testatrix did not die either suddenly or unexpectedly. Held that this was not a conditional legacy, dependent upon the sudden or unexpected death of the testatrix. Such an expression could not properly be construed as creating a condition unless accompanied by other language so clear as to admit of no other interpretation. (784)

The rule is that where a devise is limited to take effect on a condition annexed to a preceding estate, if the preceding estate should never arise, the remainder over will, nevertheless, take place, the first estate being considered only as a preceding limitation and not as a preceding condition to give effect to a subsequent limitation. The death of Manuello before that of Theresa had no other effect on the title of plaintiff than to remove one preceding life estate between his vested remainder and possession. [1 Fearne on Rem. 510, 517; U. S. Trust Co. v. Hogencamp, 191 N. Y. 281; Ege v. Hering, 108 Md. 391.]

Abbott v. Middleton, 21 Beavan, 143, decided by Sir John Romilly as Master of the Rolls, and on appeal to the House of Lords in 7 House of Lords Cases, 68, is directly in point. The will involved in that case gave the widow of the testator a life interest in certain funds, just as the will in the present instance gave a life estate to Theresa Bernero, and then it made the following provision concerning those funds:

"And on her decease, the sums provided and set apart for such payment to become the property of my son George Carpenter (now Captain in his Majesty's 41st Regiment of Foot), so far as he, the said George Carpenter, my son, shall receive the interest on such sum during his life, and on his demise, the principal sum to become the property of any child or children he may leave, born in lawful wedlock, and in such sums as my said son shall will and direct. But in case of my son dying before his mother, then, and in that case, the prin-

cipal sum to be divided between the children of my daughters, (naming them) in equal portions to each.''

The Master of the Rolls held that the provision, ''In case of my son dying before his mother, then and in that case the principal sum to be divided between the children of my daughters, (naming them) in equal portions to each'' should be construed as meaning that that disposition should be made in case the son died before his mother without issue; in effect, the words ''without issue'' were supplied by implication. The Master of the Rolls said:

''In the second branch of the sentence, the testator proceeds to give the property over, if the son died before his mother. If the meaning of this be that the gift over is (to) take effect whether the son leave children or not, merely because he predeceases his mother, it appears to me to be in a great degree inconsistent with and repugnant to the gift to the children of the son. I am at a loss to conceive, upon what principle the testator could have meant this bounty toward his grandchildren to depend upon the circumstances whether their father survived his mother or not. A bequest to grandchildren if their father survived his mother, but nothing to them if he did not, seems absurd, inconsistent and repugnant to itself, unless explained and made rational by some peculiar extrinsic circumstances, none of which exist in this case. To impute such an intention to the testator seems to me to be what the court will not do, unless the words and the authorities are too strong to be overcome.''

The Lord Chancellor and Lord St. Leonards reached a similar conclusion when the case came before the House of Lords. The Lord Chancellor characterized the bequest as expressed ''capricious and irrational.'' [7 House of Lords Cases, l. c. 87.] He declared, *ibid*, p. 81;

''It is impossible to entertain any moral doubt of the testator's intention, and there is, therefore, great danger of the mind being strongly and improperly influenced by this consideration. But disclaiming all right to act upon any conjectural interpretation, I have ar-

rived at a satisfactory conclusion that in the will itself there can be found an ample justification for the decree which has been pronounced.''

Lord St. Leonards said, *ibid,* page 95:

''Now if I were asked, morally speaking, what the intention of the testator was, I cannot have the slightest doubt about it. . . . The property is actually given without any doubt or ambiguity to the son's children, so that if it is to be taken away from the children, we must find clear words to effect that object.''

Lord St. Leonards further said, *ibid,* page 96:

''Now there is one important observation in this case. There is no contingency expressed or implied upon which the property is given to the children. There is no contingency in the gift itself to the children. There is no exclusion of the children upon the happening of a contingency upon which the property is given over.''

On page 101, he repeats this thought, as follows:

''And then comes in that important observation, as I consider, which I have already made, that in the gift to the children of the son there is no contingency expressed, and in the gift over of that property upon the contingency of the wife surviving the son, there is no exclusion whatever referred to of the children. I find, therefore, the property remaining in the children, and in my apprehension clearly unaffected (speaking still of intention) by the gift over.''

Two of the Justices, while practically, if not actually, conceding that the testator never could have intended that which his words expressed, yet felt themselves unable to construe the will according to that apparent intention Lord Wensleydale said:

''Nothing can be more reasonable than to suppose that he meant in this case to provide that his son's children, after their father's death, should take the property bequeathed to their father for life, whether he died in his mother's lifetime or afterwards. . . .

''My advice, therefore, to your Lordships would be to reverse the decree of the Master of the Rolls. If that

should not be the result, I can only say that I am glad, because I believe that it was a mistake on the part of the testator." [7 House of Lords Cases, pp. 113 and 120.]

But our statute, Section 555, Revised Statutes 1919, commands us to have due respect to the true intent and meaning of the testator.

It will be seen that the Abbott and RoBards cases are in accord. Indeed, the RoBard case seems to be stronger for appellant in this, that the devise in that case was conditioned expressly, and not by implication, upon his wife being dead when the will took effect and that, as his wife was alive when he died, the devise to the children failed and therefore only the devise to the widow remained and the fee descended to his heirs, subject to the life estate. [167 Mo. l. c. 459.] But this court held that those words *did not create a condition* but were only descriptive of the time when the remainder in fee is to vest. That is the general rule as has been seen from citations supra.

Bernero's will says, expressly, "at his decease to pass to and vest in fee in his children, but in default of such direct heirs at the time of his death, the title  .  .  . shall  .  .  .  vest in my right heirs." In view of this plain provision, whether Manuello was "in or out of the body" when Theresa died seems to be wholly irrelevant. Of course Manuello's life estate fell in at his death, but to say that it was the clear intention of the testator to dis-inherit not only his own grandchildren but, in default of grandchildren, that he also intended to cut off his own brothers and sisters in the event Theresa survived Man-uello, contravenes not only the established rules of con-struction which made it a limitation and not a condition, but the strong presumption founded on human experience (which accords with the ordinances of God and man), that he did not intend to cut off his own flesh and blood and leave his estate to strangers. [40 Cyc. 1412.] Such con-clusion is allowable only when the rules of construction will not permit another. The will clearly shows that Manuello's children were the first objects of the testator's affection, and that, in default of such children, he naturally

turned to his brothers and sisters. "If the disposition violates all natural laws, justice and humanity, juries and courts will resot even to technicalities to prevent a great wrong." [Bowman v. Phillips, 47 Ind. 341.]

II. The next provision of the will is, "If, however, my said wife shall survive Manuello, then she is empowered," etc. It is claimed this clause was clearly intended to disinherit the testator's grandchildren and his brothers and *Interpolating* sisters as well, if Theresa survived Manuello, *Words.* with or without issue.

If these clauses are read literally, there is a clear repugancy. We must read this will from the viewpoint and environment of the testator and harmonize it consistently, if that may be done, with the testator's intention. Courts assume that a testator, dictating a will under the influence of family relations, will seldom intentionally cut off the issue of a son or daughter for the benefit of strangers, without some good reason therefor.

What was there, if anything, that turned the testator's affections awry and led him to disinherit Manuello's children and give his property to strangers, as respondents contend? We can find nothing in the record. Evidently the power of appointment was to be exercised only in the event Manuello left no issue. The dominant purpose of Bernero, however bunglingly expressed it may have been, was to provide a life estate for his widow and, subject to that, a life estate for his son with remainder in fee to his son's children, if he had any, but, in default of issue, to leave the property to his brothers and sisters.

We have another clear illustration of the rule of supplying, transposing and substituting words when necessary to harmonize the will with reason and common sense, in Nichols v. Boswell, 103 Mo. 151. The will contained the following provisions: 1. One dollar each to two grandchildren. 2. A devise of all real estate to testator's granddaughter, Minerva Nichols (daughter of a deceased daughter, Permelia Hudson), and the testator's two daughters, Mary Boswell and Amanda Hudson, share and share alike. 3. A further devise reading as follows:

''I further will, that in case the above-named Minerva Nichols and Amanda Hudson, or either of them, should be dead and not now living, then all of my estate, both real and personal, I give and devise and bequeath to my daughter Mary, wife of John Boswell. . . . ''

Amanda Hudson died before the testator, and it therefore clearly followed from the above quoted third provision, taken literally, that the daughter, Mary Boswell, was entitled to the entire estate; for that provision specifically stated that, if either Minerva Nichols or Amanda Hudson should be dead, then all of the estate was to pass to Mary, to have and to hold, to her and her heirs forever. The court said (pp. 157-158):

''There is no uncertainty about these bequests. They are unequivocal and absolute, without condition or qualification. The division of the property and the provisions for the proper and natural objects of his bounty, thus made, were just and equitable, such as might have been expected from a parent who wished to show no partiality or preference among his children or their descendants. . . .

When he comes to make a third clause, had his intention changed, and did he intend thereby that, if his daughter Amanda was not living, his grandchild who was first named, who was apparently first in his thoughts and affections, should be disinherited? There was no such connection between plaintiff and Amanda, as could raise even a suspicion that their interests should stand or fall together.''

To accomplish what it found to be the intention of the testator, the Court supplied or interpolated in the third paragraph of the will the words ''undisposed of'' so as to vest in his daughter Mary only ''all my estate, both real and personal, undisposed of,'' and in doing this the court said (p. 160):

''This supplying of words to effectuate the manifest intention is allowable under the well-known rule, 'that in the construction of a will the intention of the testator, apparent in the will itself, must govern, and that

in order to effectuate that intention, as collected from the context, words may, when necessary, be supplied, transposed or changed. And it is no objection to supplying the omission, that different persons may differ in regard to which of two or more words, of similar significance, will more appropriately supply the omissions.'

The proof from the whole will and from the condition of the parties, their relation to each other, and the character of the property, is manifest and convincing, that these or similar words were inadvertently omitted from the will.

The evidence introduced for the purpose of showing the situation of the parties was proper, and there was no error in admitting it. In the construction of ambiguous or conflicting provisions the situation of the parties may very properly be taken into view."

In Grace v. Perry, 197 Mo. 550, a clause in the will reads: "But should both of my children die without issue of their body, then my grand nephew, Charles F. Loker, shall inherit all my property." It was held to provide for a devolution of those shares in case of the death of the children or either of them. Held, also, that in construing wills all technical rules of construction must give way, and, in arriving at the intention, the relation of the testator to the beneficiaries and the circumstances surrounding him at the time of the execution of the will should be considered and the will read from his viewpoint.

In Briant v. Garrison, 150 Mo. 655, the testator gave all of the land east of the center line running north and south between sections 8 and 17, and gave the remainder of his property to his brothers and sisters. A literal reading of this clause disinherited those who were first in the affections of the testator, and gave all the property to his brothers and sisters. The court substituted the word "through" for "between." The judgment was affirmed, citing many cases. [See page 668.]

In McMahan v. Hubbard, 217 Mo. 624, it was found from a consideration of all the circumstances that the de-

287 Mo.—41

scription of the land devised to a daughter and an adopted son was erroneous and the judgment of the trial court correcting it was affirmed.

In Wells v. Wells, 279 Mo. 57, l. c. 64, words omitted in the sheriff's return were supplied to sustain a judgment by default.

In Dulaney v. Dulaney, 79 S. W. 195, the will provided that the testator's grandson, Woodford, should receive the income from his part of the estate until he was twenty-five years of age. "If he should die before twenty-five, one-third of his income is to go to his mother if she remains unmarried. If she marries, one-sixth. . . . The rest to be divided between the heirs living and heirs of any deceased." The court said, following Abbott v. Middleton:

"There can be no reason for supposing that the testatrix ever had such an absurd purpose as to disinherit Woodford's children, if he died before he was 25 years old, but if he managed to live until after he was 25, they were to have all his property upon his dying intestate. . . . Therefore, to carry out testatrix's intention, there should be read into this clause the words 'without issue' so that the sentence would read: 'If he should die before he is 25, without issue, one-third of his income is to go to his mother,' etc."

The words "without issue" were also supplied by the court in the case of Selden v. King, 2 Call (Va.) 74, which contained the following provisions:

"Item: It is my further will and pleasure that if the child should die wherewith my wife now goes withall then I give and bequeath unto my said dear and loving wife Mary Achilly, and her heirs forever, all my lands, houses, . . . chattels movable and immovable, also all my debts that is due, owing and belonging to me in this county or in any other part or place whatsoever."

The court, in concluding its discussion of the matter, at page 91, said:

"According to which idea, the true construction is, that the testator by the latter words 'if the child should

die,' referred to the preceding devise to the daughter in tail, and meant to add the words, 'without heirs of her body,' but inadvertently omitted them. Therefore, in order to fulfill his intention, and carry the dispositions, he was making, into effect, it ·is necessary to supply those words: And then, upon the death of the daughter without issue, the remainder in fee took effect in possesion in the wife.''

The same result was reached in the case of Liston v. Jenkins, 2 W. Va. 62, where the devise was as follows:

"Thirdly, the lands which I now live on, exclusive of that which I have bequeathed to my son, Jonathon Jenkins, I give and bequeath to John, my son-in-law, and Rebecca Smith, my daughter, after my wife's decease, fully to be possessed and enjoyed by them during their natural lives, and after their decease, the said land to fall to their son, John Jenkins Smith, and in case of his death, the land is (to) fall to the rest of John Smith and Rebecca Smith's children.''

It was held by the court that to effectuate the intention of the testator, the words "without issue living at his death" should be supplied after the words "and in case of his death," so that the provision would read: "And in case of his death without issue living at his death, the land is,'' etc.   (l. c. 65.)

In Young v. Harkleroad, 166 Ill. 318, the words "without such heirs" were supplied after the words "in case of the death of either one" in the latter portion of a devise reading as follows:

"6th.   It is my will and I do hereby bequeath (described) to my sons, William and Isaac, and to my daughter, Florence, and to my granddaughter, Annie B. Kinder, during their natural lives, and after their decease to the heirs of their bodies (excepting only the heir now living of Annie B. Kinder, who shall not receive any portion whatever above that set apart and heretofore mentioned), and in case of the death of either one, then their portion to descend and belong to the heirs of the other persons mentioned in this section, in equal portions.''

In that case the court said:

"The testator in this clause bequeathed his real estate to his children and grandchildren 'during their natural lives, and after their decease to the heirs of their bodies.' Thus far his meaning is clear and plain. But the remaining portion of the sentence, 'and in case of the death of either one, then their portion to descend and belong to the heirs of the other persons mentioned in this section,' taken literally, directly contradicts what has just been said . . . . It is apparent that the sentence, as it stands, does not literally express the testator's intention. We . . . think that provision is understood, by implication, to mean 'in case of the death of either one *without such heirs,* then their portion to descend and belong to the heirs of the other persons, etc. Under this construction there is no necessity of rejecting any part of the will, nor of adding anything thereto, the words 'without such heirs' being plainly inferred. The defect in the language is simply a verbal omission, and being so, the true meaning of the clause may be implied, 'in order to reach the obvious intent of the testator.' " (l. c. 323-325.)

In Nelson v. Combs, 18 N. J. L. (3 Harr.) 27, the court supplied the words, "under age and without lawful issue," after the word "die" in a clause in a will reading as follows:

"And further, it is my will, that if William or Thomas should die, or either of them, the remainder to enjoy the other's property."

In that case, FORD, J., said:

"But they" (referring to William and Thomas) "being both young and liable to die under age, and without lawful issue, he meant to provide for such an event by adding 'that if either of them die, the *survivor* shall enjoy the other's property, 'evidently meaning, die under age, and without lawful issue. If they should leave any *issue,* he had before given it to such issue by the name of *heirs;* he never intended to take it from such issue, by giving both shares to the *survivor,* thus making him a double portion, and leaving the bereaved children of the deceased son

destitute of the very support he had so carefully provided for them by the name of heirs. It is contrary to the justice of all his other provisions to suppose it. Being unlearned, he left out the words *under age and without lawful issue,* by mistake." (1. c. 37.)

The will involved in Baker v. Estate of McLeod, 79 Wis. 534, gave the entire estate to the executor in trust, and directed the executor to remain in possession until the testator's daughter, Annie May McLeod, should attain the age of 21 years, when the estate was to be transferred to her. It further provided as follows: "But if the said Annie May McLeod shall die under the age of 21 years, then all my aforesaid estate, or proceeds thereof, with the rents, . . . shall immediately after her death be paid, applied and disposed of in the manner following" (the will then provided for other disposition). The court held that, notwithstanding that the will provided clearly for the disposition over in case the testator's daughter died before attaining the age of 21, it should be construed as meaning that this disposition should become effective only if the daughter died before that age, and left no issue. The opinion cites in support of this view, Abbott v. Middleton, supra; Liston v. Jenkins, supra, and Nelson v. Combs, supra, and proceeds upon the ground that "it may safely be assumed that, where a will is dictated under the influence of family relations, it would seldom happen that a testator would intentionally cut off the issue of a son or daughter from taking the share of the parent in his estate for the benefit of collateral objects." (p. 545.)

In Ball v. Phelan, 94 Miss. 293, 49 So. 956, the Supreme Court of Mississippi said:

"The court may assume that testator dictating the will under the influence of family relations, will seldom intentionally cut off the issue of a son or daughter from taking the share of the parent for the benefit of collateral objects.

"Where a will necessarily confines the interest of a child of testator to his life, the court may lay hold of slight circumstances to raise a gift in the issue of such

child, and thereby avoid imputing to the testator the intention of giving the property to the devisee over, and leaving the issue of the life tenant unprovided for."

The Court of Appeals of New York held in The Matter of the Estate of Brown, 93 N. Y. 295 (as appears from the *syllabus* in the case), as follows:

"Where a will is capable of two constructions, one of which will exclude the issue of a deceased child, and the other permit such issue to participate in a remainder, limited upon a life estate given to a parent of the child, the latter construction should be adopted."

The same court said, in March v. March, 186 N. Y. l. c. 103:

"In ascertaining such intention we are required to take into consideration the surrounding circumstances under which he framed the provisions of the will, the situation of his estate, and of the members of his family whom he wished to be the recipients of his bounty. In considering these circumstances for the purpose of ascertaining the intention of the testator, there is a presumption which we must bear in mind, and that is, that, in the absence of unfriendly relations existing between testators and their descendants, there almost invariably exists a desire and an intention . . . that their property should go to their descendants, rather than to strangers to their blood."

Abbott v. Middleton, on the point in question, has been expressly followed in Metcalf v. Framingham Parish, 128 Mass. l. c. 374, and Sanger v. Bourke, 209 Mass. 481, l. c. 487-488.

III. The first clause of paragraph 5 gives the remainder in fee to the children of Manuello. That is clearly settled by RoBards v. Brown, supra. The second clause takes it away and gives the wife of the testator, if she shall survive Manuello, no beneficial interest

**Inconsistent Clauses.** is the property, but the bare power of appointment. The testator could not have intended that both clauses, as written should be operative. It is a cardinal rule of construction that where there is a clear

gift in one clause of a will, it cannot be cut down or limited by a subsequent clause unless it is as clear and decisive as the language of the clause which devises it. [Cornet v. Cornet, 248 Mo. l. c. 224, 154 S. W. 121; Thornbrough v. Craven, 225 S. W. 445, l. c. 447.] There can be no presumption that Louis Bernero intended to give the remainder to Manuello and in the next breath to take it away from him. There is evidently an ellipsis. We have cited a number of cases where the courts have not hesitated to harmonize similar inconsistencies by supplying the words "without issue." If the words suggested be supplied, both clauses will harmonize and be consistent. We think this should be done. In doing this we are not making a new will. The supplied words will clearly effectuate the intention of the testator.

There are other questions discussed in the briefs but we think it unnecessary to go into them. This case was originally assigned, in Division One, to SMALL, C., whose very able opinion reversing the judgment and remanding the cause was concurred in by BROWN and RAGLAND, CC.

The judgment should be reversed and the cause remanded with directions to enter judgment for the plaintiff and against the defendants in accordance with this opinion. *Woodson, J.,* concurs.